ALFRED KEHDE, JOHN S. LEAHY, WALTER H. SAUNDERS and JULIUS GATES, Appellants, v. VAUDEVILLE THEATRE COMPANY, FRANK H. TATE, CHARLES CELLA, JOSEPH MARTIN, ORPHEUM CIRCUIT, SOUTHERN REAL ESTATE & FINANCIAL COMPANY, GRAND RIALTO THEATRE COMPANY, MIDDLETON THEATRE COMPANY, ORPHEUM THEATRE COMPANY, AMERICAN THEATRICAL COMPANY, IMPERIAL THEATRE COMPANY, COLUMBIA THEATRE COMPANY, SUPREME REALTY COMPANY and CLARA P. BOBB.

In Banc, July 2, 1923.

1. **USE OF PROPERTY: Joint Interest.** If there is no joint interest in the property which is the subject of the suit as between plaintiffs and defendant, what use defendant makes of her part of it is no ground for complaint on the part of plaintiffs.

2. **LEASES: Adjoining Lots: Construction of One Valuable Building: Forfeiture: Sale as Whole: Partition: Combination and Monopoly: No Joint Interest.** Separate owners of three adjoining lots, by

separate and independent instruments, bearing different dates, leased them for terms of twenty years, expiring the same year, but in different months, to a company which erected a valuable theatre building on all of them, and afterwards the leases were forfeited for failure to pay rents, etc. One of said lessors, a defendant, subsequently leased her lot to one of the other defendants; another is a plaintiff, and the interest of the third in his lot was acquired by the other plaintiffs. Plaintiffs allege that said theatre building cannot be divided by each owner taking his own lot and the improvement thereon; that the defendants refuse to pay them rents; that they have entered into a conspiracy with themselves whereby said building is to be closed; that the defendant who is the owner of one of the lots is being paid, and she and her tenant are a party to the conspiracy, and the purpose of all the defendant companies is to create a monopoly of the theatre business, that the original leases by the separate owners of the three lots was a joint-adventure, and that each of them knew when the leases were made that the plan and purpose was to erect one great building on the three lots for theatre purposes and all consented thereto, and that all agreed that no one of the owners would do anything that would injuriously affect the interests of the others. But no such covenants appear in the leases, nor is any reference made in one to the others, nor is there any mutuality of agreement between them, but each is a distinct and separate instrument, nor is there in any of them any reference to estates of reversion.

*Held*, first, in the absence of any agreement in the leases as to the use and occupation of the three lots after the expiration of the terms for which they were respectively leased, each of the lessors, upon the termination of the leases, again became the several and independent owner of his or her lot, and thereafter they owed each other only such duties as are imposed by law upon owners of adjoining tracts of land, and subject to such duties each is entitled to the exclusive use, possession and enjoyment of a several lot, and no power exists to compel a fusion of their estates, to be followed by a sale and finally by a distribution of the proceeds.

*Held*, second, that, as the petition does not allege facts showing that some interest or estate in the lots is held jointly, in common or in coparceny, it does not state a cause of action for partition, either under the statute or in equity.

*Held*, third, that there was no joint-adventure between the three original lessors, and if one of them, upon the termination of the leases, being entitled to the exclusive use and possession of her lot, leased her lot to one of the other defendants, such tenant is entitled to such exclusive use and possession, and that possession does not violate the right of the other lessor

or those of the plaintiff grantees of the owner of the third lot; and whether such tenant, in refusing to use the portion of the building situated on the plaintiffs' lots in common with the other lot, or to permit it to be so used, said .tenant is acting alone or in concert with the other defendants, and what its or their purposes are, are of no concern to plaintiffs, because no legal right of theirs is violated by such refusal.

*Held*, fourth, if the defendants are parties to a pool or trust or . combination in restraint of trade, in violation of the anti-trust statutes, as the petition alleges, and one of the defendants, the tenant of the defendant owner of one of the lots, in furtherance of such combination to secure a monopoly of the theatre business, refuses to allow the building on the three lots to be used for theatre purposes, still no right of action accrues to the owners of the other two lots, since in a legal sense they, not being engaged in the theatre business, have not suffered injury in either their business or their property.

*Held*, fifth, that on no theory does the petition state a cause of action, and the general demurrer thereto was rightfully sustained.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

AFFIRMED.

*Leahy, Saunders & Walther* and *Abbott, Fauntleroy, Cullen & Edwards* for appellants.

(1)   The facts pleaded are sufficient to constitute a contract in equity creating a community of interest. Even though there is no specific or express allegation of a direct and formal contract between Gates, Block and Bobb and the holders of the lease, yet the petition pleads such facts as clearly create a contract in equity, from which arises a community of interest, and if there is a community of interest plaintiff is entitled to relief in equity. The petition charges that the theater building was built "with the knowledge and consent and by the direction of the owners of said tract." And further charges that as a result of the consent given by each of said defendants one building of the kind described in the petition was erected, and each of them understood that a duty rested on him to conduct himself in relation

to the property so as not to destroy its value. It is further alleged that the leases were made and entered into with the knowledge on the part of all the defendants that the plan was to erect one great building on the tract severally owned. It is further averred "that each and all (of the defendants) consented thereto, and agreed that no one or more of the owners would do anything that would injuriously affect the enterprise, and promised and agreed to refrain from doing anything to prevent the building being used in common." The petition further avers that a relation of "co-adventurer, joint owner or trustee" existed between the defendants, and expressly avers that said "relationship is the result of consent given by each of said parties," namely, Bobb, Block and Gates. These allegations plead promissory representations, and the petition further avers that the plaintiffs and their predecessors in title acted on such promissory representations, and, therefore, it follows that in equity a contract was created between them, and under the liberal rules invoked in the construction of pleading, such a contract is clearly embodied and unbosomed in the petition. This clearly creates an equitable estoppel between the co-owners because each altered his position to his detriment by allowing the theatre covering all three tracts to be erected by the common lessee of each. Before that time each had the absolute right to his respective tract of ground with the improvements thereon, but by dedicating all three tracts to a common enterprise with the consent and agreement of all three co-owners, it is clear that new rights and duties were reciprocally created, because under the new arrangement each by arbitrary action could destroy the property rights of the others in the common enterprise. This power necessarily implies the equitable obligation resulting from the facts pleaded, to so use the property of each in the joint enterprise as not to damage or destroy the rights of the others in such enterprise. The duty springs from the obligation, and it is a familiar

doctrine of the law that correlative rights imply correlative obligations or duties. 3 Pomeroy's Equity Jurisprudence (4 Ed.) secs. 1294, 1295;.Sharp v. Cheatham, 88 Mo. 498. See, also: Halligon v. Frey, 49 L. R. A. (N. S.) 113; Prather v. Prather, 77 S. E. 937; Maunsell v. White, 4 H. L. Cas. 1039, 1056; Dashwood v. Jermyn, L. R. 12 Ch. Div. 781. Such contracts may be enforced, or their breach prevented, by injunction. Pom. Eq. Juris. (4 Ed.) sec. 1342; Pom. Eq. Rem., secs. 272, 284; 14 R. C. L. sec. 13, p. 23. The principle is further illustrated by the holdings denying the right of ejectment in railroad cases, where the owner of lands stands silently by while improvements are being made by a railroad company or consents. Improvement Co. v. Railroad, 255 Mo. 256. (2)   Where several instruments are made as part of one transaction, they will be read together, and each will be construed with reference to the other. 9 Cyc. 580; Pittsburg Ry. Co. v. Bridge Co., 155 U. S. 156; Bailey v. Railroad Co., 17 Wall. 96; Mo. Pac. Ry. Co. v. Atchison, 17 Mo. App. 484. And this is true even though the agreements are executed at different times in furtherance of a common compact purpose.   Johnson County v. Mead, 84 Mo. 489; Mo. Pac. Ry. Co. v. Long, 17 Mo. App. 501. So, also, when several agreements are executed at substantially the same time in relation to the same subject-matter and to accomplish a common purpose, and the execution thereof is known to every party to either instrument, they should be construed as one contract, though the parties to each instrument are not the same. MacDonald v. Wolff, 40 Mo. App. 302; Morey v. Clopton, 103 Mo. App. 368, 380; Western Advertising Co. v. Star Publishing Co., 146 Mo. App. 90, 98. (3)   The agreement which plaintiffs plead unquestionably outlines a joint interest in the building. The petition shows that the building being a permanent structure became a part of the realty, and its value exceeds the value of the realty, twice over, and therefore the agreement relating to the building when said building

became a part of the realty in effect relates to and affects the realty, and the realty became charged with the same community of interests that existed in the building. The agreement to construct a building which would become a part of the realty was in substance an offer and agreement which affected the ownership of the realty. Therefore, after the making of such an agreement, and its full performance, the realty became impressed with a community of ownership identically the same as the building. . (4) Equitable estoppel is defined as the effect of voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights, which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against any person who in good faith relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of contract or of remedy. The principles of equitable estoppel have been well settled by repeated decisions of this court. Withers v. Railroad, 226 Mo. 373, 399; Powell v. Bowen, 279 Mo. 281. It is true that, where all the parties have equal means of knowledge, equitable estoppel does not ordinarily arise except as the result of contract, but in this case the necessary promissory representations and conduct of the original owners are pleaded and the equitable estoppel follows as a matter of law. (5) Pleadings are to be construed liberally according to the Missouri statutes and the repeated decisions of this court. A legal contract is here pleaded. All the elements of a legal contract here appear; namely, consent of all parties for a valuable consideration, a definite subject-matter, and a specific execution of the stipulations of the agreement, which, of course, takes the contract out of the Statute of Frauds. The theatre was erected by the common consent and direction of all three lot owners, and their rights in the common structure resulted from their original contract. (6) According to the bill, all the defendants were outsiders. They

had, prior to their unlawful conspiracy, no interest in this theatre either by purchase or lease, but pursuant to the unlawful conspiracy to keep the theatre dark, they acquired a secret and unrecorded leasehold interest in part of the theatre, pursuant to their unlawful conspiracy to close it up, and they now take the position that their motive is wholly immaterial. It is true that ordinarily motive is not material in the determination of purely legal rights, but it is not true that outsiders, who have no legitimate interest to protect and whose sole interest is a selfish and unlawful interest, namely, to perpetuate a theatrical monopoly in the city of St. Louis, can acquire an interest in a theatre solely for the purpose of accomplishing their unlawful end. The theatrical trust in this case has enacted and enforced its own statute of mortmain against plaintiffs' property, and the victims of this infamous attempt have been the plaintiffs. This was a wanton and malicious act of mischief and falls within the doctrine announced by Judge GRAVES in his concurring opinion in Hughes v. Kansas City Motion Picture, 282 Mo. 304, 330, where the court held that "the better considered cases which are as old as the common law, declare that two or more persons have no legal right to unlawfully conspire to injure another, even though each separately had the legal right to do what the combination had agreed to do." See also Hunicke v. Quarry Co., 262 Mo. 560. (7) There is nothing in the petition which gives color to the idea that all joint relationship terminated on the forfeiture of the lease. Certain it is there is no express or implied averment to that effect in the petition, and hence if such a conclusion results it must result from a judicial construction of the contract relations outlined in the petition. The proper construction of that contract is reached by ascertaining the intention of the parties, and certainly it was not the intention of the parties to sacrifice a building worth $200-000 by sawing it into sections as soon as forfeiture occurred. McManus v. Fair Shoe & Clothing Co., 60 Mo.

App. 216. It is also a rule that where a contract will admit of two constructions, that one, which is consistent with duty, honesty and fair dealing is to be adopted in preference to one involving a breach of trust. Johnson Co. v. Wood, 84 Mo. 489; Hadden v. Shoutz, 15 Ill. 582. (8) If there is an equitable estate in these premises in which the parties plaintiff and defendant have a community of interests, then partition lies. The statutory mode of partition in Missouri does not divest a court of chancery jurisdiction. Equitable estate may be partitioned in chancery. Spitts v. Wells, 18 Mo. 468; Reed v. Robertson, 45 Mo. 580; James v. Broff, 157 Mo. 402; Welch v. Anderson, 28 Mo. 293. (9) On the facts alleged in the petition the defendants' acts in regard to the property were tortious, and on the familiar principle applied in partition cases they are chargeable with the rents and profits of the building which plaintiff leased on account of their wrongful acts. The acts of the defendant, as portrayed in the petition, amount to an ouster of plaintiff, and whenever one having a right to property is ousted by the wrongful acts of another, the wrongdoer must account for the rents and profits. Cain v. Cain, 69 Am. St. Rep. 863; Ferris v. McNally, 45 Mont. 20. (10) The allegations of the bill are ample to sustain an order appointing a receiver. The lack of cooperation by the defendants is in and of itself a sufficient cause for the dissolution of the enforced exclusive control of the property in which all have an interest in common, and warrants the appointment of a receiver and an order that the property be sold. Tardy's Smith on Receivers (2 Ed.) sec. 71, p. 291; Wilson v. Wilson, 2 Keen, 249; Slemmer's Appeal, 58 Pa. St. 168, 98 Am. Dec. 255.

*Boyle & Priest, Thos. J. Rowe, Robt. E. Moloney* and *Geo. T. Priest* for respondents.

(1) The petition is multifarious on its face. It attempts to combine an equity proceeding and an action

at law for damages in one and the same petition. In equity it seeks the appointment of a receiver, etc.    At law it seeks money damages against defendants for an alleged conspiracy. The two actions cannot be combined. Hodgson-Davis Grain Co. v. Hickey, 200 S. W. 438. (2) The sole purpose of the proceeding as disclosed by the petition is the appointment of a receiver. There is no main cause of action to which the appointment of a receiver is ancillary. No such proceedings are known to our law. Price v. Trust Co., 178 S. W. 745. (3) As to the first cause of action the petition fails to disclose that the plaintiffs have any grounds upon which any equitable relief can be predicated. It does not show a joint mutual undertaking reduced to writing to operate the real estate in question as a theatre. (4) As to the second cause of action, the charge of a monopoly in restraint of trade: The business of giving shows to the public is not commerce or trade, and therefore a monopoly in that respect could not be had in contravention of the anti-trust laws of the State of Missouri. State ex rel. Star Publishing Co. v. Associated Press, 159 Mo. 410. (5) Conspiracy cannot be predicated upon a single act lawful in itself. Mrs. Bobb had the right to keep her property idle; her lessee, the Vaudeville Theatre Company, had the like right. (6) There is a misjoinder of parties plaintiff. They charge a conspiracy in restraint of trade and ask for triple damages. Each party plaintiff, if damaged at all, is damaged separately and not jointly, and consequently cannot maintain a joint action for damages. (7) There is a misjoinder of parties defendant. The plaintiffs ask for a partition of the separate property alleged to be owned by plaintiffs and defendants, but there is no allegation therein that the plaintiffs and defendant are either joint tenants or tenants in common.

RAGLAND, J.—This is an appeal by plaintiffs from a judgment on demurrer to their petition. The nature of the action can best be disclosed by the pleading, an abridgment of which follows:

"Plaintiffs state that on the 21st day of February, 1911, Julius Gates was the owner of the following described tract of land, hereinafter referred to as Gates Tract: [Here follows a description of a lot of ground in City Block 132 of the city of St. Louis, having a front of 35 feet on the north line of Walnut Street.]

"That on the 23rd day of February, 1911, Albert Block was the owner of the following described tract of land, hereinafter referred to as Block Tract: [Here follows the description of a parcel of land situated in City Block No. 132 having a front of 50 feet on the west line of Sixth Street.]

"That on the 1st day of March, 1911, Clara P. Bobb was the owner of the following described tract of land, hereinafter referred to as Bobb Tract: [Here follows the description of a parcel of land situated in City Block 132 having a front on the west line of Sixth Street of forty-eight feet and nine inches.]

"That each of said tracts of land adjoin each other, and, taken together, form one solid block of ground.

"Plaintiffs say that by lease dated the 21st day of February, 1911, and duly recorded in Book 2405, page 348, Julius Gates leased the Gates tract to the Crawford-Talbot Theatre Company, hereinafter called Crawford Company; that on the 23rd day of February, the said Albert S. Block, by lease duly recorded in Book 2401, page 443, leased said Block tract to the said Crawford Company; that on the 1st day of March, 1911, the said Clara P. Bobb, by lease duly recorded in Book 2415, page 358, leased said Bobb tract to the said Crawford Company; that the Gates lease was for a period of twenty years, beginning May 1, 1911, and ending April 30, 1931. The Block lease ran for a period of twenty years, commencing April 1, 1911, and ending March 31, 1931, and the Bobb lease ran for a period of sixteen years and ten months, commencing July 1, 1914, and ending April 30, 1931, with right of possession on March 1, 1911, subject to the terms of a prior lease then outstanding, ending in 1914.

"That under and by virtue of the terms of said leases the Crawford Company took possession of said tracts, and by the terms of each of said leases the said Crawford Company was entitled to remove or make certain alterations upon the buildings then on each of said tracts, and to erect thereon certain structures, including a building suitable for theatre or amusement purposes; that the said Crawford Company did, with the consent of the holder of the outstanding lease and the said Bobb, Gates and Block, make divers and sundry improvements on said land, and removed the building therefrom and constructed on said tracts of land a large theatre building, popularly known as the Hippodrome, which was intended and designed to be used as one structure for the purpose of a theatre or place of amusement, and the building of said theatre cost a large sum of money, and enhanced the value of said property more than two hundred thousand dollars.

"That it was provided in each of said leases that if the Crawford Company should not faithfully fulfill all the agreements and covenants in said leases contained, the said Crawford Company should forfeit to the lessors all the improvements and buildings made by it on the said three tracts of land. Plaintiffs say that the said Crawford Company, for a period of years, operated said theatre, but thereafter did not faithfully fulfill or perform the obligations imposed upon it by virtue of the terms of said leases, failed to pay any rent therefor, turned over the premises to other parties, who likewise failed to pay the rent, and, on or about the —— day of ———, 1916, each of said leases was forfeited and the owners of said three tracts became the owners of the building and improvements then on said three tracts of land, known as the Hippodrome, with joint interests therein.

"That afterwards, to-wit, on or about the 2nd day of July, 1917, John S. Leahy, Walter H. Saunders and Irvin V. Barth, composing the firm of Leahy, Saund-

·ers & Barth, became the owners of all the title of Albert S. Block, in and to the Block tract, and that afterwards the said Saunders and Leahy became the owners of the interest of said Barth in said tract and that the title of said Block tract is now held by the plaintiff, Alfred H. Kehde, as trustee for the use and benefit of the said Leahy and the said Saunders.

''Plaintiffs say that said theatre building was built with the knowledge and consent, and by the directions of the owners of the said tracts; that said building is one structure and is built upon and covers the entire surface of said three tracts of land, and that when the leases were forfeited, as hereinbefore averred, the owners of said three tracts of land and their successors in title became the joint owners of said theatre building; that said theatre building is so constructed and built that it cannot be divided by each owner taking his own land and the improvements thereon; that if the improvements were so divided their value would be utterly destroyed, to the great loss and damage of the owners of all the tracts; that the value of the property consists, in a large measure, of the value of the theatre building; that it is located in a part of the city of St. Louis where theatre property and amusement houses command great and a growing patronage, and the said building, if properly managed as a theatre or place of amusement, will produce a large revenue, as it is constructed, and produce large rentals; that if it is subdivided along the lines of the three tracts above described its value will be practically destroyed, and cannot be rented nor can it be made to produce any income; that to subdivide the building along the lines of the three property owners would be impracticable, would cost a vast sum of money, exceeding over one hundred thousand dollars, and would leave the property useless, undesirable and non-income producing; that if the building is destroyed or wrecked its entire value will be lost and the material cannot be sold for enough to pay cost of wrecking, and the building,.

at the present time, is of the value of two hundred thousand dollars, and is of greater value than the real estate upon which it stands. Plaintiffs say that by reason of the character of the property, the uses for which it was intended, and by reason of the fact that it was built as one structure, the owners of the three tracts upon which the building stands became co-adventurers and agents and trustees each for the other, and charged with the duty of so handling the property as not to destroy its value, or the value of the property rights of the co-owners. Plaintiffs say that in equity and good conscience the duty rests on each of the owners of said tracts to so conduct himself with relation to said property that the same can be made and kept an income producer, and, in equity, each of the owners of said three tracts owe to every other owner a duty as joint adventurer, joint owner or trustee, and said relationship and said duty arises out of the relationship existing between the parties, which relationship is the result of consent given by each of said parties, or his predecessors, that a building of the character hereinbefore described should be built and used in common as one theatre or amusement building.

"That when the leases above referred to were made and entered into, each and all of said parties knew that the purpose and plan was to erect one great building on the said tracts so severally owned, for theatrical or amusement purposes, and each and all consented thereto, and agreed that no one or more of the owners would do anything that would injuriously affect the enterprise, and promised and agreed to refrain from doing anything which would be inequitable or unconscionable, or prevent the building from being used in common, and all persons claiming under them assumed all of said duties and obligations.

"Plaintiffs further state that said defendants, in order to keep said theatre dark and to effectuate their monopoly upon the theatres of St. Louis, in 1916, en-

tered an unlawful conspiracy to control said theatre and
to dictate to all present or future owners of interests
therein in order to subserve their selfish and unlawful
interest, and that ever since the said defendants, seek-
ing to oppress and damage plaintiffs and their prede-
cessors in title, and to boycott and ruin the other owners
of the Hippodrome property, and with a view to ad-
vance their own pecuniary and selfish interests, and to
establish a theatrical monopoly, contrary to both the
statute and common law of Missouri, maliciously intend-
ing and contriving to injure said persons and their prop-
erty, entered into an unlawful conspiracy, confederation
and combination to restrain trade and commerce and to
boycott the other owners of said property, the object,
purpose and intent of said defendants being to prevent
said property from being used, rented or sold, except as
they dictated, and to force, by such unlawful confedera-
tion, conspiracy and boycott, the said persons to sell or
lease said property to them, for a nominal sum, or to
prevent said building or premises from being used for
any purpose; and as part of said conspiracy, and to
effectuate the same, the said Vaudeville Theatre Com-
pany, on the —— day of ———, 1916, entered into a
secret compact with Clara P. Bobb, by which she received
from defendant and their agents certain sums of money,
in consideration of which said Vaudeville Theatre Com-
pany was given possession of the said Bobb tract for a
long period of years, under an alleged lease running to
———, but never recorded. . . . .

"Plaintiffs say said Leahy & Saunders acquired title
to said Block tract on or about the 2nd day of July, 1917,
and they have, on divers and sundry times since said
date, offered to lease said property to the defendants,
or to any one of them, at a fair price, but said defend-
ants, pursuant to said conspiracy, have refused and still
refuse to take any lease on said property from plaintiffs,
and plaintiffs are ready, willing and able, now, to execute
to said defendants a lease of said property, or to sell their

interest in the same to them at a fair price, but said defendants, pursuant to said conspiracy, have refused and still refuse to either lease or buy said property from said plaintiffs, or to lease or sell to plaintiffs the part of the property owned or controlled by them, or to permit said entire property to be leased to outsiders. . . .

"Plaintiffs say that the said Vaudeville Theatre Company obtained control of the Bobb tract for the purpose of preventing plaintiffs or their predecessors in title from disposing of their interest, except upon such terms as they might dictate, and that the further and principal purpose of obtaining control of said Bobb tract was to prevent any other theatrical or amusement company from operating said Hippodrome Theatre, in competition with the said Grand Opera House and other theatres owned by defendants, so as to maintain their said monopoly, and the aforesaid defendants intend to perpetuate their wrongful conduct indefinitely and inflict damage on plaintiffs continuously, unless restrained by this court.

"Plaintiffs further say that the Vaudeville Theatre Company, aided and assisted by the defendants, Southern Company, Tate, Cella, Martin and the Middleton Theatre Company, obtained the lease on the Bobb tract with the view and for the purpose of keeping the Hippodrome Theatre closed; that afterwards the other defendants, with full knowledge of the wrongful purpose of the aforesaid defendants, adopted all that the said defendants had done and entered into the said conspiracy and urged the said defendants to continue in their wrongful conduct and agreed to share, and have shared, the expense of pepetuating said wrong and making it effective, and all of said defendants acted maliciously and were actuated by an unlawful purpose and intent of making profit for themselves at the expense of plaintiffs, and were actuated by a desire to obtain a monopoly on all of the theatre buildings in the city of St. Louis, and crush out competition, contrary to both the statute and common law of Missouri. . . .

"Wherefore, plaintiffs pray that a temporary receiver may be appointed herein, immediately, with full power and authority to take possession of said theatre building and lease the same upon such terms and conditions as may be approved by this court; that upon final hearing said receiver may be made permanent; that the alleged lease, agreement or understanding between the owner of the Bobb tract and the said Vaudeville Theatre Company shall be declared null and void and for naught held; that the said defendants herein be required to account to said plaintiffs for rents and profits and all damages inflicted by them, pursuant to said malicious conspiracy, as aforesaid, and should be required to pay treble damages to said plaintiffs under the statute of the State of Missouri in such case made and provided, in addition to their attorneys' fees, as provided by such statute; that the said property, after the cancellation of said lease, should be decreed to be partitioned, and since the same is not susceptible to division in kind, the same should be sold as an entirety, and the proceeds thereof distributed among the parties then entitled thereto, according to their respective interests.

"Plaintiffs further pray for such other, further and general relief as to equity may seem meet."

Defendants filed separate demurrers. The ground of the several demurrers were: that the petition failed to state facts sufficient to constitute a cause of action, and that there was a misjoinder both of parties plaintiff and parties defendant. The demurrer of defendant Bobb set up, as an additional ground, that there was an improper joinder of different causes of action in one count. All of the demurrers were sustained, and plaintiffs declining to plead further final judgment was entered for defendants.

Looking first to the general demurrer, does the petition state facts sufficient to constitute a cause of action? A reading of the petition makes it evident that the pleader was not willing to rely upon a single theory of lia-

bility. He has so grouped his facts as to give them a various legal aspect, apparently hopeful that from one point of view or another they can be construed as giving rise to at least one of the several causes of action hinted at. Looked at from different angles, the pleading may be regarded as an attempted statement of a cause of action for the partition of real estate, or for an equitable accounting under a contract of joint-adventure, or for damages accruing from a violation of the anti-trust statute, or for damages sustained as the result of a common-law conspiracy. Or possibly it should be construed as an effort to set up all of these causes of action. Notwithstanding the manifold aspect exhibited by the pleading, it is reasonably clear from the facts set forth therein, that if plaintiffs have had any legal right violated by defendants, it is one growing out of an alleged community of ownership of the building known as the Hippodrome and the several parcels of ground upon which it stands. If there is no joint interest in the property as between plaintiffs and defendant Bobb, the use she and her present tenant are making of her property afford plaintiffs no ground for complaint.

On February 21, 1911, plaintiff Gates leased a parcel of ground of which he was the owner to the Crawford Company for a term of twenty years, beginning May 1, 1911, and ending April 30, 1931; on February 23, 1911, Block, Leahy & Saunders' grantor, leased to the same company a parcel of land of which he was the owner, for a term of twenty years, beginning April 1, 1911, and ending March 31, 1931; and on March 1, 1911, defendant Bobb leased to the Crawford Company a parcel of ground of which she was the owner, for a term of sixteen years and ten months, beginning July 1, 1914, and ending April 30, 1931, subject to an outstanding lease expiring in 1914. The separate tracts of Gates, Block and Bobb lay adjacent to each other, but there was no community of interest of any kind with respect to their several holdings. The Crawford Company which was the tenant of each

could not by any act of its have encumbered their several reversions, or effected a fusion of their respective estates or ownerships. If therefore any such union was brought about, it must have been through a contract, express or implied, between themselves.

There is nothing to indicate that the three leases were severally executed between the owners of the tracts of ground and the Crawford Company pursuant to a common understanding or agreement between the owners on the one hand and the company on the other, or that the giving of the several leases were but parts and parcels of one transaction. The negotiation of each lease by the company appears to have been a separate, distinct and independent transaction. While all three were made at about the same time, they were executed on different days and the covenants and provisions of each were in no wise dependent upon the executions or terms of the others; in fact, it does not appear that any reference whatever was made in any one of them to either of the others. The only allegations of the petition with reference to the terms of the several leases with respect to improvements are as follows: "That under and by virtue of the terms of said leases the Crawford Company took possession of said tracts, and by the terms of each of said leases the Crawford Company was entitled to remove or make certain alterations upon the buildings then on each of said tracts, and to erect thereon certain structures, including a building suitable for theatre or amusement purposes." From these it appears that the Crawford Company under each of the several leases had the right merely to remove or make certain alterations upon the buildings then on the tract covered by the specific lease, and to erect thereon certain structures, including a building suitable for theatre or amusement purposes. Under the lease with defendant Bobb, therefore, the company had the privilege of altering the buildings on her ground or of removing them and erecting a new building thereon, but it was under no obliga-

tion to do so. The lessor was apparently satisfied with the ground rent specified in the lease and did not require the making of improvements as and for an additional rental to be received at the end of the term. And precisely the same situation existed under the leases given by Gates and Block.

Was there a contract or understanding other than the ones embodied in the several leases? The only direct or explicit averments with respect thereto, aside from purely legal conclusions, are as follows: "Plaintiffs say that said theatre building was built with the knowledge and consent, and by the directions of the owners of the said tracts. . . . That when the leases above referred to were made and entered into, each and all of said parties knew that the purpose and plan was to erect one great building on said tract so severally owned, for theatrical or amusement purposes and each and all consented thereto, and agreed that no one or more of the owners would do anything that would injuriously affect the enterprise, and promised and agreed to refrain from doing anything which would be inequitable or unconscionable, or prevent the building from being used in common." These allegations reasonably construed, in connection with those relating to the execution and terms of the several leases, can only mean, that Gates, Block and Bobb each knew when he executed his lease to the Crawford Company that the company planned to erect one great building on the three tracts to be used for theatre and amusement purposes, and that, in executing a lease with such knowledge, each impliedly consented not only that a single building be erected on the three tracts, but that such building when constructed might be used as one tenement during the term of the lease given by him.

The allegation that the theatre building was built "by the directions of the owners of the said tracts" is in direct conflict with the other allegations of the petition relating to the same subject-matter. If the aver-

ments with respect to the terms of the leases are true, the owners of the parcels of ground had nothing whatever to do with the erection of the structures thereon, except in giving the Crawford Company the privilege of making such improvements as it saw fit. It should also be noted in passing that the facts pleaded are wholly insufficient to give rise to an estoppel equitable, which is impliedly invoked in some of the allegations just quoted and in other parts of the petition.

At the time the theatre building was erected by the Crawford Company, the company had an estate for years in each of the three tracts of land, and it had the right to unite its several possessions and to use and occupy the grounds included therein as a single tenement. But as already suggested it could not by such use and occupation in any wise affect the estates in reversion. [Webster v. Stevens, 5 Duer (N. Y.) 553.] And so far as the owners of the reversions are concerned, we are unable to find in the petition a statement of any facts upon which can be predicated a contract or understanding, express or implied, with reference to the use and occupation of the several properties after the expiration of the terms for which they were respectively leased. Absent such an agreement, Gates, Block and Bobb, upon the terminations of the leases, each again became the several and independent owner of a specific parcel of the ground, and thereafter they owed each other only such duties as are imposed by law upon proprietors of adjoining tracts of land. Subject to these each was, and is, entitled to the exclusive use, possession and enjoyment of his several property, and no power exists to compel a fusion of their estates, to be followed by a sale and finally by a distribution of the proceeds. [McConnel v. Kibbe, 43 Ill. 12; Stevenson v. Bachrach, 170 Ill. 257.]

As the petition does not allege facts which show that some interest or estate in the lands is held jointly, in common or in coparcenary, it does not state a cause of action for partition, either under the statute or in equity.

What has been said disposes of the contention that Gates, Block and Bobb were, by virtue of some contract between them, parties to a joint-adventure.

If defendant Bobb, upon the termination of the lease given by her to the Crawford Company, became entitled to the exclusive use and possession of her tract of land, including the part of the Hippodrome building that is located on it, then her present lessee, the Vaudeville Theatre Company, is now entitled to such use and possession; and it does not violate any legal right of either Gates or the grantees of Block when it excludes them from a joint participation therein. Whether, in refusing to use the portion of the building that is on the Bobb ground in common with those parts which are on the Block and Gates tracts, or to permit it to be so used, the Vaudeville Theatre Company is acting alone or in concert with others, and what its or their motives and purposes may be, are of no concern to plaintiffs, because no legal right of theirs is violated by such refusal.

Likewise, if defendants are parties to a pool, trust or combination in restrain of trade, in violation of the anti-trust statute as the petition asserts, and the defendant Vaudeville Theatre Company in furtherance of the plan of such combination to secure a monopoly of the amusement business in St. Louis refuses to allow the part of the Hippodrome it has leased to be used for theatre purposes, still no right of action accrues to plaintiffs by reason thereof, simply because they have not, in a legal sense, suffered injury in either their business or their property. They are not engaged in the amusement business, and they have no building suitable for such business. Defendant Bobb and her lessee in refusing to permit her property to be used in common with that of plaintiffs violate no rights of the latter. Their loss resulting from such refusal is *damnum absque injuria*.

As the petition does not state facts sufficient to constitute a cause of action on any legal theory, it is not necessary to consider the other questions raised by

the demurrers. The judgment of the circuit court is affirmed. *Walker, James T. Blair* and *David E. Blair, JJ.*, concur; *Graves* and *White, JJ.*, and *Woodson, C. J.*, dissent.