LEONARD P. PATTON, APPELLANT, v. R. L. GOODSON, RESPONDENT.—
183 S. W. (2d) 333.

Kansas City Court of Appeals. November 6, 1944.

*Nat M. Lacy* for appellant.

*George N. Davis, Charles W. Shelton* and *Wm. VanCleve* for respondent.

DEW, J.—This is an action in equity for accounting. It is based on transactions between partners and on a contract for dissolution of the partnership and for sale of appellant's interest therein to his partner, the respondent. The trial court found against the plaintiff

(appellant) and for the defendant (respondent), dismissing the petition, and assessed the costs to appellant.

Appellant, by his amended petition, alleged in substance, that prior to January 8, 1940, he and respondent were engaged in merchandise business in Macon, Missouri, as partners, and in the conduct of said business, certain indebtedness on notes and open accounts had become due them and certain outstanding obligations of the firm for goods and merchandise existed; that on said date said partners, for the purpose of dissolving their firm and closing up the affairs thereof, entered into an agreement by which the appellant agreed to sell his one-half interest in the merchandise and fixtures of the store known as the Quality Hardware Store, to respondent; that they agreed thereby on an inventory basis of $5903.30, less outstanding obligations, the appellant to receive from respondent $50 in cash therefor, and within ten days an additional sum of $1850; that the $50 and $1850 cash payments were made and received as agreed. He further alleged the agreement to be that the outstanding obligations of the firm amounted to $1147.66, which was to be deducted from the agreed inventory aforesaid, the remainder to be divided equally, and deducting the $1900 from the quotient so obtained, the balance, $477.86, to be due the appellant; which latter sum, together with a like amount due the respondent, was to be held in escrow by respondent as a separate fund ot secure their liability on the payment of certain notes, which they had endorsed and transferred to a finance company, and that when such notes were duly paid, the said partners were to be released of liability thereon, and the $477.86, belonging to appellant should then be paid to him.

The petition also alleged the agreement to be that in consideration of the sale and delivery of appellant's one-half interest in the firm, assets, and business to the respondent, the latter would pay to appellant one-half of all cash on hand in bank as of January 8, 1940, and all accounts receivable would be divided equally between them as collected. The petition alleged that appellant had accordingly surrendered his interest in the property aforesaid to the respondent, but that the respondent had collected large sums of money on the bills receivable and had failed to account to the appellant for the $477.86 held by respondent, as aforesaid, although due and owing to the appellant, and had not accounted to appellant for one-half of the bank account of the firm.

The petition further alleged that all the books and papers since January 8, 1940, had been in the hands of the respondent; had been in his charge while the firm was in business; that the appellant was not advised of the amounts of the accounts receivable, nor the amounts collected thereon, nor the bank balance, and that an accounting is necessary for the purpose of ascertaining the amount due the appellant, arising out of the agreements and transactions above set forth. Ap-

pellant alleged that he was without adequate remedy at law; that there is a balance due him under said agreement and prayed for an accounting between the parties to determine the amount due and for judgment for the appellant for breach of said contract in whatever sum the accounting may show to be due appellant, and for general relief.

Respondent's answer to the first amended petition was a general denial, and for further answer, admitted the partnership had existed long prior to January 8, 1940; stated that during all the time said firm was in existence appellant was a traveling salesman and devoted his time to such employment, while the respondent was engaged during all of that time as manager of the partnership business and retail store in Macon, Missouri, and as clerk and bookkeeper thereof, devoting his entire time to said business; that it was expressly agreed between the partners that respondent should receive for his services in the management and supervision of said business a salary of $125 per month; that said salary was regularly paid to respondent during the entire course of said business except $820, which is an outstanding obligation of the partnership to be taken into account on final accounting; that in the conduct of said business, certain indebtedness became due to the parties on notes and open accounts, and that they had contracted certain debts for merchandise and for expenses in conducting said business, including the balance due the respondent, on account of his employment as manager and supervisor of said business.

The respondent further, by his answer, admitted that the partnership was dissolved on January 8, 1940, whereby respondent purchased all the right, title, and interest of the appellant in said firm, and alleged that in so doing the parties entered into the following contract:

## "Contract

"This contract, made and entered into on January 8, 1940 by and between Leonard P. Patton, party of the first part, and R. L. Goodson, party of the second part.

"Party of the first agrees to sell his undivided one-half interest in the Quality Hardware Store, Macon, Missouri, on the following terms:

"On inventory of $5,903.38 less outstanding obligations shall be considered his one-half interest of store.

"Party of the Second Part agrees to pay, $50 cash in hand at once, receipt of which is hereby acknowledged, and $1,850 within ten days from date of this contract.

"Both parties of this contract agree to divide all cash on hand and in bank, as of today equally, also to divide all accounts receivable equally as collected.

"Both parties of this contract agree that any balance due party of the first, held in escrow, shall be paid to him when obligations of Quality Hardware are finally liquidated.

444

"Signed

"Leonard P. Patton,
"R. L. Goodson.

"Earl Edwards,
"Witness.
"Alonzo English,
"Witness".

The answer further stated that pursuant to the terms of said contract, respondent became and now is the sole owner of said store and business; that he has fully complied with the terms of said agreement and accounted for all monies due appellant thereunder except $54.50, now due and owing to appellant. Further answering, respondent stated that he has always been ready to pay and is now ready to pay said sum of $54.50 in full settlement of the amount due appellant by reason of said contract of sale and purchase, and tenders into court the sum of $69.22 in full satisfaction and settlement thereof; that there are yet outstanding bills receivable due said ownership amounting to approximately $69.22, which are of no value and not worth the expense of collection, of which respondent is willing to assign his interest therein to appellant, and asks the court that said partnership be adjudged dissolved, and for general relief.

Appellant's reply denied the execution of the contract of sale as pleaded in said answer, and averred that the same does not contain all the terms and conditions agreed to; that at the time of said alleged transaction of sale, respondent fraudulently and falsely failed to disclose to appellant the claim of respondent for $125 per month as manager and supervisor of said partnership business; that appellant denies that respondent made any claim for that amount, or any other amount for his services at the time the sale was agreed upon, and that the indebtedness of the partnership set forth in Exhibit "A" attached to the reply (showing total invoices payable $1147.66) was all the indebtedness owing by said firm; that respondent had full charge and control of the books of the firm and was thoroughly familiar therewith; that respondent's claim for $125 per month is being made long after the transaction in question, and is not in good faith, nor was it disclosed to the appellant at the time of the making of said contract of sale, and fraudulently concealed from him for the purpose of making said contract; that respondent is estopped now to assert the same; that the appellant entered into the contract in good faith, relying on the settlement of the respondent as to the amount owing by the partnership, and was induced to enter into the said contract by reason of the representations made by respondent, and on respondent's statement and agreement he would waive any and all salary claims. The reply also contained a general denial.

The evidence tends to show that in October, 1925, the parties entered into a partnership to conduct a retail hardware store in Macon, Mis-

souri. The business was known as the Quality Hardware. They agreed to go in "50-50 in money". Goodson, respondent, was an experienced hardware merchant. Patton was employed as a salesman by the Belknap Hardware Company, in which employment, it was understood, he was to continue. Goodson was to give his entire time as manager of the store, and as such to have supervision over the same and of hiring help, handling the money, and keeping the records. Patton was in the store frequently in the evenings, occasionally in the mornings, and sometimes on Saturdays and holidays, and for one month after the termination of his employment with the Belknap Company, and before his employment with another company. He made out his orders for his outside employer while at the store, and would occasionally wait on a customer. Patton had full access to the books and records of the firm and often examined them in the evenings. Among other records was one kept in the cash register book, showing the itemized salary account for the years 1936 to 1939, inclusive.

On the question of salary to Goodson, whether or not under the partnership agreement he was entitled to any, and if so, what amount, and whether he had waived his right to same at the time of dissolution, which constitute the only substantial matters of dispute, the evidence is conflicting. On that point the respondent's evidence tended to show that at the time of the partnership agreement it was agreed that Goodson, in consideration of devoting his whole time to the management of the business, was to receive a salary of $125 per month; that the appellant knew of and agreed to this, and that accordingly, respondent drew monthly salary checks in his own favor for the remainder of the first year 1935, and for 1936, and that in 1937, on account of unfavorable business conditions, he advised Patton that he would draw but $100 per month and leave $25 each month in the business until the business justified paying the accrued balances. Goodson testified:

"I made it very plain with Mr. Patton that I wasn't taking a reduction in salary, that when the business justified my drawing the balance I was leaving in that I would draw it. That conversation occurred there in the store in 1937. There had been no change in that arrangement in 1938".

The books and records show, and Goodson testified that he drew $1230 in 1937, $1200 in 1938, and $1250 in 1939, leaving a balance due, according to his contention, of a total amount of $820 on the agreed salary for those years. This salary arrangement was also testified to by the wife of respondent, who stated that she was present when the original partnership agreement was made.

The appellant's evidence on this point tends to show that no agreement was made at the time of the formation of the firm to pay any salary to respondent, but his testimony in that respect shows that he knew the salary was being paid. He stated the agreement to be that

each should put in an equal amount of money, and each should share equally in the profits, and that they never agreed on any salary. But he stated that some months Goodson would draw $100 and some months $125, and some months $50, and also paid Goodson's wife a salary. He stated:

"I made objections to that . . . yes, sir, I objected to Mr. Goodson drawing $125 per month. Some months when he would only take in $300, he would write a check for $125. The place never showed gross profits of over twenty-three percent. Yes, I was working for Belknap while Mr. Goodson was taking care of this business. I never did acquiesce in him drawing it. I always protested the salary, because we had no agreement on it, and I didn't think the business justified that kind of salary. . . . I knew he was getting that salary. He put that in as capital stock against my objection".

He admitted being paid $100 for his own services for one month. "That was a salary for the time I spent in there", he testified. He stated that about ten days before the dissolution agreement, he had a conversation with Mr. Goodson in regard to the salary, wherein he said Mr. Goodson stated:

"I have to have a job and if we sell, I won't have any job, and I will forget my back salary that may be coming to me".

And I said:

"You don't have any back salary coming to you. He said he would forego everything, cancel everything, any credit he might have. In return for that cancellation, I was to execute this contract."

He said that about a year after the dissolution and upon the occasion of his asking Mr. Goodson for an accounting as to outstanding bills receivable, Goodson ordered him out of the place of business and told him to stay out and that Goodson said to him "For that, I'll put in enough salary to wipe out everything you have coming to you".

The question of the salary item in dispute arose upon the occasion of respondent delivering to appellant a final statement of the amount due appellant under the contract of sale and dissolution, wherein but $54.50 was shown coming to appellant, and wherein the respondent charged the joint account with $820, back salary due respondent for the years above mentioned. Appellant's testimony is that the contract for sale and dissolution as set forth hereinabove and as it appears in respondent's answer, was not the contract entered into. He testified that when the contract was drawn he met with respondent and the witnesses, whose names appear on the contract, and discussed the proposed agreement and insisted upon a definite disclosure and enumeration of the outstanding obligations of the firm. He said that respondent thereupon furnished him with a list of the items outstanding, consisting of various invoices payable aggregating $1147.66; that he, Patton, thereupon, with pencil, wrote on the right hand margin of the agreement the amount of the inventory, $5903.38, with the

amount of the outstanding firm obligations thereunder, $1147.66, showing a balance of $4755.72, which, divided by two, showed a balance of $2377.86, from which he subtracted $1900, leaving the amount in figures $477.86 "escrow". With this marginal insertion on the contract, Patton testified that he took the contract home and consulted his wife regarding the same, and that the same was later signed by the parties with the marginal insertion as aforesaid. Both parties admitted that no mention was made at the time of the dissolution agreement of any back salary due Goodson as a part of the outstanding obligations of the partnership. The testimony of the wife of appellant is contradictory as to whether the pencil insertions were on the contract before signature. She said positively that they were on appellant's signed copy of the contract when shown to her. One of the witnesses to the contract was dead at the time of trial, and the testimony of the other is not positive as to the marginal insertions.

Goodson testified that the items constituting $1147.66 were only the invoices payable, and that that was the information that the appellant was demanding. He testified that he knew nothing about what notations Patton may have made in pencil on Patton's copy of the contract, and that there were no such insertions on the copies when signed by him. He denies that he made the threat that he would put in enough salary to wipe out anything coming to Patton upon final accounting, but stated that in an argument between them in 1940, in regard to the escrow item which had been held by him for security against outstanding liability on firm notes, that he told Patton that any money that was due him would be paid him when the liquidation was completed, and said:

"Pat there won't be a big lot coming to you and he said 'Why?' I said 'You forget that back salary?' He said 'You don't intend to take that'. I said 'Yes I intend to take that'. He said 'I will get it out of you, if I have to beat it out of you. You are just a damned crook'. I said 'Patton, get out of this store. Any time you want to come back, if you can be a gentleman; but if you can't, don't come back'. My wife was sitting there. No, sir, I didn't tell him I would put enough salary in there to take up everything he had coming."

The evidence shows that from time to time Goodson remitted to Patton for collections received on outstanding accounts receivable with statements accompanying the same, the last of which set forth the agreed valuation with deductions therefrom of various items paid, and remittances to Patton, and including a deduction of $820 to Goodson for back salary from January 1, 1937, to October 31, 1939, and which showed the account paid in full, considering the accompanying check for $39.50, dated April 12, 1941.

Appellant complains, among other contentions, that the court rendered a general decision and judgment without first determining the question of appellant's right to an accounting as required by law.

At the very outset of the trial, respondent filed an itemized account entitled "Abstract of Settlement of Collections on accts. rec. of Quality Hardware partnership to June 29, 1942", and which contained also what was designated as "Abstract of Settlement of Partnership of L. P. Patton and R. L. Goodson, as per agreement of January 8, 1940". If correct, this account covered the collections and disbursements on partnership accounts and obligations, including the back salary items due the respondent, to-wit: $270 for 1937, $300 for 1938 and $250 for 1939, or a total back salary account of $820. The parties immediately proceeded to examine and consider this exhibit, and objections to certain items thereof were made and ruled upon, whereupon the appellant took the stand and proceeded to offer evidence on the merits of his petition.

It is true that the usual and proper procedure in a suit for an accounting is first to hear and determine the question whether or not the petitioner is entitled to an accounting and if so, an interlocutory decree is made accordingly and an accounting is thereafter had before the court, or before a commissioner, whose findings thereafter are submitted for the approval of the Court upon exceptions thereto, if any, and final judgment thereupon entered. [Buffington v. Green, 221 Mo. App. 695, 285 S. W. 531.] This procedural course is for the benefit of the defendant in such proceedings in order that, if he desires, he can contest the very right of the plaintiff to any accounting. In the instant case plaintiff prayed for an accounting and the same was not contested on that point by the respondent, who, ignoring his right to the interlocutory proceedings, filed an account instanter. The appellant, without objection to the procedure, proceeded thereupon to present to the court his evidence on the merits of his case, and entered into an exhaustive consideration of the account as filed. Appellant was and is in no position now to object to an accounting being promptly afforded him, and for which he prayed.

As to the appellant's contention that it was not a part of the partnership agreement that the respondent should receive a salary, his evidence is unconvincing. Several times in the testimony he admitted that respondent was drawing a salary; that he knew of his salary checks, and that they had discussed such, and that he made objections from time to time. He did not in the accounting demand any return or reimbursement to the firm account of any such amounts paid out to respondent as salary. He admitted that he himself drew $100 as salary for one month's services. His real contention now seems to be that the respondent waived his right to the accrued balance of unpaid salary, and is estopped to claim the same.

It is not reasonable to believe, in view of the evidence, that the respondent, an experienced hardware merchant, would agree to put in his one-half of the original cash investment in the firm and in addition thereto, and without some additional compensation, devote

his entire time in the place of business in the management of the firm's establishment, while the appellant devoted practically all his time to outside employment. We believe the evidence is overwhelming that it was the understanding and agreement from the inception of the partnership that the respondent should be paid a salary of $125 per month.

The claim of appellant that respondent is estopped by the contract of sale and dissolution from demanding his accumulated back salary depends on the terms of that agreement for sale and dissolution. The pencil marginal notations, admittedly made thereon by the appellant, are not shown by the weight of the evidence, to have been on the contract when signed by the parties, nor considered by both as included therein. Without such notations thereon made by the appellant, the contract would reasonably contemplate monies due respondent for agreed salary as among the outstanding obligations of the firm. We find it to be established by the weight of the evidence that such back salary due the respondent from the partnership is included in the agreement.

The other points made by appellant are necessarily disposed of by our conclusions above, and we find no merit in them. No error was made in the assessment of costs to appellant. The judgment of the trial court should be affirmed. It is so ordered. All concur.