Hedge Bland **ADAMS**, Garland Eugene Adams and Mary Elizabeth Adams, Respondents,

v.

William W. **ADAMS**, Rue Finley Mason and Minnie Jane Mason, Appellants.

No. 45476.

Supreme Court of Missouri.

Division No. 1.

Oct. 8, 1956.

Francis G. Hale, Robert E. Coleberd, Liberty, for appellants.

J. William Blackford, Kansas City, for respondents.

HOLMAN, Commissioner.

Plaintiffs instituted this action seeking to establish an interest in certain farm lands; to have a contract declared to be a mortgage and an accounting as to the amount due thereon; for partition and for an accounting of a partnership with defendants which was alleged to have existed for 16 years without any accounting. A trial resulted in the entry of an interlocutory decree and a modified interlocutory decree which, in effect, decreed that plaintiffs were the equitable owners of a certain described tract of 187.375 acres of land, subject to the amount due on the contract which was held to be a mortgage, ordered an accounting, and appointed a referee to which the matter of the accounting was referred. A motion for new trial was overruled and the defendants Mason have appealed.

The plaintiffs are Hedge Bland Adams, his son Garland, and the latter's wife Mary Elizabeth Adams. The defendants are William W. Adams (brother of Hedge), his daughter Minnie Jane Mason, and her husband Rue Finley Mason. The various controversies herein grow out of the ownership and operation of the Adams family farm containing about 375 acres. The farm was acquired by Hedge and William under the will of their father who died in 1916. In 1932 these brothers gave a deed of trust thereon to secure a note for $16,000 to The Commercial Bank of Liberty, which was paid as a result of the partition proceedings hereafter mentioned. In 1933 the land was sold in partition and purchased in the name of William who placed deeds of trust thereon to the Federal Land Bank and Land Bank Commissioner securing notes in the total sum of $19,000. We infer from the oral arguments in this court that the reason for the partition sale and resulting transfer of title to William was the fact that Hedge's wife had become of unsound mind and hence not legally capable of transacting business. At any rate, plaintiffs continued to live on the farm.

On July 29, 1938, William and his wife conveyed the land to Rue and Minnie Mason subject to the encumbrances heretofore noted. On the same day two other instruments were executed. In one, Rue and Minnie Mason, as first parties, agreed (in substance) with Hedge, Garland and Mary Elizabeth Adams, second parties (plaintiffs), that they would convey to Garland and Mary a tract, therein described, containing 187.375 acres (a part of the aforementioned farm) at any time during the lifetime of either Garland or Hedge upon the condition that second parties pay first parties (1) $1,710.28, with interest, which they had expended for the benefit of Hedge, (2) any further monies, with interest, thereafter advanced for the benefit of second parties, and (3) one half of the amounts thereafter paid by first parties on the encumbrances heretofore described. It was further provided that second parties give first parties a note for $1,000 secured as a vendor's lien. In the event Garland and wife acquired the title to said land under that agreement, it was further provided that they could purchase an additional tract of 27½ acres for $58.80 per acre.

The other instrument executed on July 29, 1938, was a partnership agreement, for the operation of the whole farm, entered into by Rue Mason, William W. Adams, Hedge Adams, and Garland Adams. The terms of this agreement need not be stated, but it may be noted that it provided that there should be an annual accounting among the partners and that checks on the partnership bank account should be signed by William W. Adams. On May 6, 1942, the encumbrances heretofore mentioned were paid and released of record.

The relief sought by plaintiffs has already been stated generally. In part, it was alleged that William Adams kept the books of the partnership (which was terminated by Mason in 1954); that there has never been an accounting, and that

defendants have refused to give plaintiffs an accounting. The answers filed by defendants substantially denied the allegations of the petition.

On January 17, 1956, an interlocutory decree was filed which found and provided (1) that plaintiffs were the owners of the fee-simple title to the tract of 187.375 acres described in the aforementioned contract, (2) that said contract was in fact a mortgage on said land representing an indebtedness which plaintiffs owe the Masons, the amount thereof to be determined by a referee, (3) that after payment of said mortgage debt, Garland and wife could enforce the agreement by the Masons to sell them the additional 27½ acres of land, (4) that no partnership accounting had been given plaintiffs, and (5) that the matter be referred to Richard A. Moore, an attorney, for an accounting of the partnership and also of the amount due on the mortgage (contract) and that he report his findings to the court.

The defendants Mason filed a motion to modify or set aside said interlocutory decree and also a separate motion for new trial. On March 1, 1956, the court entered a "Modified Interlocutory Decree." It is not entirely clear from the record whether this latter decree was supplemental to or substituted for the first decree. We have concluded (as was apparently the construction of the parties) that it was supplemental to the first one. However, since we are of the view (as hereafter indicated) that the appeal herein is premature, and hence the cause is still pending in the trial court, it would seem that the trial court would be authorized to make such amendments as it deems advisable to clarify that question and to correct certain inadvertent or typographical errors in these interlocutory decrees.

The modified interlocutory decree specifically stated that the record title to the tract of land in question was in the Masons. It further specified in detail the provisions of the two Federal Land Bank deeds of trust that were a lien on the said land when the aforementioned contract was entered into and directed that the referee determine the amount paid thereon by the Masons after the execution of the contract. As we have stated, the plaintiffs were required to repay one half of the amount so paid as one of the conditions of obtaining title to said tract.

The transcript does not disclose any ruling on the motion of defendants Mason to modify the first decree, although it may be that the modified decree resulted from a consideration thereof. As stated, the motion for new trial was overruled at the same time the modified decree was entered.

 We are in agreement with the contention of plaintiffs that the appeal herein is premature. The right of appeal is entirely statutory and Section 512.020 (all statutory references are to RSMo 1949, V.A.M.S.) provides, in part, that an appeal may be taken "from any final judgment in the case." The statutory definition of a judgment is "the final determination of the right of the parties in the action." Section 511.020. We have often said that "a final, appealable judgment is ordinarily one which disposes of all parties and all issues in the case." State ex rel. v. Hammel, Mo.Sup., 290 S.W.2d 113, 116.

 The decree (we will hereafter refer to the original decree and modified decree as together constituting one decree) herein was entitled as "interlocutory." That word is defined as "not final" and in a legal sense is said to be "Something intervening between the commencement and the end of a suit which decides some point or matter, but which is not a final decision of the whole controversy." 47 C.J.S., p. 85. An examination of the decree will indicate that it was properly designated as interlocutory, as it provides for further proceedings in the trial court, to wit: an accounting as to various financial transactions between these parties extending over a period of 16 years.

Where, as here, the defendant in a case denies the right of a plaintiff to an accounting "the usual and proper procedure in a suit for an accounting is first to hear and determine the question whether or not the petitioner is entitled to an accounting, and if so, an interlocutory decree is made accordingly and an accounting is thereafter had before the Court, or before a commissioner, whose findings thereafter are submitted for the approval of the Court upon exceptions thereto, if any, and final judgment thereupon entered." Patton v. Goodson, 238 Mo.App. 439, 183 S.W.2d 333, 337. The instant case is very similar to Boden v. Johnson, 224 Mo.App. 211, 23 S.W.2d 186, 189, wherein an appeal from a decree ordering an accounting was held to be premature, the court therein saying, "There was no final judgment determinative of the rights of the parties which could be enforced by execution, and the order made clearly contemplates further action and proceedings on the part of the court before the subject matter would be ripe for the rendition of any final judgment. The propriety of the order requiring an accounting is not before us for consideration, because, of necessity, it was a required preliminary order, before the court could proceed to final judgment. The proceeding in this case, so far as it went, was in accordance with the general and accepted rules of procedure in matters of accounting. Buffington v. Green et al., 221 Mo. App. [695] loc. cit. 702, 285 S.W. 531. Under the above authority it would have been error for the court to have proceeded to cast an account between the parties before determining the issue as to the right of an accounting and entering its interlocutory judgment. In entering such interlocutory judgment the court is not required, or in fact permitted, to determine the merits of the controversy and the rights of the parties as a basis for final judgment."

In contending that the instant decree was final and appealable the defendants rely mainly on Abbott v. Seamon, Mo.App., 217 S.W.2d 580 (see former appeal in 203 S.W.2d 139). In that case the court referred to the judgment in an accounting suit as interlocutory and said it became final when the motion to modify was passed upon. However, in that case the accounting had been fully taken before the judgment was entered and the court evidently described it as interlocutory in order to indicate that it was not appealable until the after-trial motion was disposed of.

It is provided in Section 512.020 that an appeal may be taken "from any interlocutory judgments in actions of partition which determine the rights of the parties." The appellants contend that the decree was appealable under that provision. There is no merit in that contention. The decree did not purport to partition any real estate. It adjudged that plaintiffs were the equitable owners of the 187-acre tract subject to the mortgage (contract) lien of defendants Mason. The parties defendant were not decreed to be the owners of any undivided interest in that tract. "The general rule is that there can be no partition unless each of the parties thereto has an interest in all of the property sought to be partitioned." Fulk v. Williams, Mo.Sup., 37 S.W.2d 511, 512. See also, Kehde v. Vaudeville Theatre Co., 299 Mo. 540, 252 S.W. 969.

It should be noted that the court did not order a separate trial of any issue herein as contemplated by the provisions of Section 510.180(2) and Supreme Court Rule 3.29, 42 V.A.M.S.

The appeal herein, being premature, is dismissed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.