**Louis A. WEINBERG and Emilie Weinberg, Appellants,**

v.

**NORTHERN ALASKA DEVELOPMENT CORPORATION, Appellee.**

No. 279.

Supreme Court of Alaska.

July 18, 1963.

Rehearing Denied Aug. 27, 1963.

Sherman A. Noyes, Fairbanks, for appellants.

Henry J. Camarot, McNealy, Merdes & Camarot, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

This case has to do with the right of a property owner to interfere with the natural flow of surface water across his land.

The property involved is shown in an appendix to this opinion. The defendant (appellee), Northern Alaska Development Corporation, owned land to the west of Morgan Way. While developing a trailer court in 1958 defendant filled in a portion of a ditch located on its property. This ditch, commonly known as the "Old Slough", was a natural drainage course which gathered surface waters from the hills to the north and provided a run-off for melting snow each spring. During the same year defendant constructed a ditch along the westerly side of Morgan Way in order to provide a drainway for the waters that had been diverted from the Old Slough.

In the spring of 1960 extremely hot weather melted the snow in the surrounding hills within a period of approximately three days. This resulted in a fast run-off of water approaching flood proportions, which eroded the Morgan Way ditch and washed out a part of the road which gave access to property owned by the plaintiffs (appellants) in the Totem Park Subdivision at the southerly end of Morgan Way. They brought this action for a mandatory injunction to compel defendant to repair the road and to restore the Old Slough to its condition as a drainage course. The trial court held against plaintiffs and they have appealed.

Plaintiffs contend that the Old Slough was a watercourse, in the sense that the term is used to denote water flowing in a definite channel which defendant could not divert without being liable for the resulting injury to plaintiffs.[1] We disagree. The evidence showed that normally water flowed through the slough only during the spring thaw and on infrequent occasions during the summer months when there were heavy rains. Such periodic flow is not of such

---

1. Plaintiffs cite the case of Chicago, R. I. & P. Ry. v. Groves, 20 Okl. 101, 93 P. 755, 759, 22 L.R.A.,N.S., 802 (1908), where the court stated: "Whenever the common law prevails, every proprietor upon water flowing in a definite channel so as to constitute a water course has the right to insist that the water shall continue to run as it has been accustomed, and that no one can change or obstruct its course injuriously to him without being liable to damages."

frequency or duration as to make it practicable to classify the slough as a watercourse.[2] Instead, it must be classified as a drainway for surface waters, i. e., waters from melting snow or rain which flow on the surface of the earth but do not form part of a watercourse.[3]

■ In determining whether defendant is legally responsible for the damage to the Morgan Way road, we adopt the rule of reasonable use with respect to one's right to drain his land of surface waters. That rule, as stated by the New Jersey Supreme Court, provides "that each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." [4]

■ It is not contended that defendant did not act in good faith, and the evidence discloses that there was a reasonable necessity for defendant to alter the drainage in order to make use of its land.[5] The question of whether defendant has met the test of reasonable use depends, then, upon whether its construction of the Morgan Way ditch, to accommodate surface waters that previously flowed across defendant's land, was done in a reasonable manner.

The evidence was conflicting. The witness, Johansen, whom the court recognized as an expert on drainage ditches, testified that in his opinion the ditch had not been constructed adequately, and that he would have built the ditch in a different location away from the road and in a different manner. An engineer named Pierce testified that the ditch was not well constructed. He said that if he were building the ditch he would have lined it with rock, would have made it wider and deeper, and would have designed it for the largest recorded run-off case in a fifty-year period.

On the other hand, defendant produced evidence showing that the drainage plan had been designed by a registered engineer based on information obtained through a topographic survey of the area, that the number and size of culverts that had fed water into the Old Slough determined the size and slope of the ditch that defendants constructed along Morgan Way, and that the ditch was designed with a 4 to 1 slope based upon a recommendation made, it seems, by an assistant to the chief engineer for the Bureau of Public Roads. In addition to this evidence, the witness Coleman, who qualified as an expert engineer, gave his opinion that he "probably would have designed the same section, as far as capacity is concerned—it would carry the amount of water going through the culvert", that the ditch was of a reasonable design and quite similar and equal to the design of ditches constructed by the Bureau of Public Roads, and that in shape, dimensions and slope the ditch was similar to standards of the American Association of State Highway Officials.

■ It was the trial judge's province to resolve the conflict in the evidence. His finding that in effect the defendant, in altering the drainage, did take reasonable care

2. 4 Restatement, Torts § 841, comment c (illustration 3) (1939). See Doney v. Beatty, 124 Mont. 41, 220 P.2d 77 (1950).

3. 4 Restatement, Torts § 846 (1939); Enderson v. Kelehan, 226 Minn. 163, 32 N.W.2d 286, 289 (1948).

4. Armstrong v. Francis Corp., 20 N.J. 320, 120 A.2d 4, 8, 59 A.L.R.2d 413 (1956). See also 4 Restatement, Torts § 833 (1939); Annot. 59 A.L.R.2d 421, 434–437 (1958). For a discussion of rules that have been applied in other jurisdictions, known as the common enemy and civil law rules, see Armstrong v. Francis Corp., supra, 120 A.2d at 9–10; Annot. 59 A.L.R.2d 421; Kinyon & McClure, Interferences With Surface Waters, 24 Minn.L.Rev. 891 (1940).

5. Enderson v. Kelehan, 226 Minn. 163, 32 N.W.2d 286, 289 (1948).

to avoid unnecessary injury to other land within the area is amply supported. In view of this conclusion, it is unnecessary for us to pass upon plaintiffs' other points of alleged error.

The judgment is affirmed.

## APPENDIX TO OPINION OF THE COURT

ROUTE _____

SECTION _____ 5 _____

RANGE _____ 1 WEST _____

QUANTITY AVAILABLE _____

PROJECT _____

TOWNSHIP _____ 1 SOUTH _____

FAIRBANKS

PERIOD OF _____

FAIRBANKS MERIDIAN

To Fairbanks 4 Miles

2-18" CMPs

36" CMP

600' ±

COLLEGE ROAD

4-18" Sluice Pipes

Slough

OLD COLLEGE ROAD

To University of Alaska 1 Mile

Old Slough Filled in by Owners

Ditch 10' Deep, 20' wide due to Erosion

MORGAN WAY

50

TOTEM DRIVE

TOTEM PARK SUBDIVISION

CHINOOK DRIVE

50

50

NOYES SLOUGH

STATE OF ALASKA
DEPT OF PUBLIC WORKS
DIVISION OF HIGHWAYS

EROSION OF MORGAN WAY
IN TOTEM PARK SUBDIVISION

APPROVED _____

SCALE 1" = 200'     DATE: 5/26/60.