OPINION
 

 PER CURIAM.
 

 Curtis Ostrem’s land lay in the path of the Trans-Alaska Pipeline. For $11,988 he sold Alyeska Pipeline Service Co. [Alyeska] an easement over a 6.6 acre parcel of his land. By the terms of the easement, Alyes-ka had the right:
 

 
 *988
 
 “to ... construct, lay, maintain, operate, use, inspect, repair, remove, change the size of and replace one pipe line and appurtenances thereto ... and to construct, lay, erect, maintain, operate, use, inspect, renew, add to and remove roads, electrical and/or communication lines and cables (both above and underground) and poles with all incidental equipment...
 

 Alyeska specifically agreed:
 

 “to bury all pipe lines and all underground electrical and/or communication lines constructed hereunder below ordinary plow depth at the time of construction.”
 

 Alyeska constructed an aboveground valve control facility on .013 acres (a plot 25' x 23') within the easement.
 

 Ostrem’s amended complaint alleged,
 
 inter alia,
 
 that the construction of the above-ground valve control facility was in violation of the easement, and sought a court order to Alyeska to bury that facility. The complaint also sought damages for flooding allegedly caused on Ostrem’s property by Alyeska’s actions on an adjacent landowner’s property.
 
 [1]
 

 At a pretrial hearing there was a great deal of confusion as to what the issues in the case were. The court resolved the confusion by first
 
 sub silentio
 
 ruling that Alyeska had exceeded the terms of the easement by building the aboveground facility. Alyeska did not contest that ruling nor has it appealed it.
 
 [2]
 
 With Alyeska’s liability thus established, the court believed that the only issue was damages. It found that Ostrem was not entitled to injunctive relief because it was impossible to bury the valve control facility.
 
 [3]
 
 Thus, Alyeska had for all intents and purposes dispossessed Ostrem: “I find that it’s inverse condemnation,” the court stated. Ostrem was simply entitled to damages for the loss of his land.
 

 The case was submitted to the jury on instructions to award Ostrem the fair market value of the land occupied by the facility together with any severance damages to the remainder of his property. In addition, the jury was ’ instructed to determine whether Alyeska’s activities on the adjacent property had interfered with the natural drainage of surface waters from Ostrem’s land and, if so, whether Alyeska’s conduct had been reasonable.
 

 The jury returned three verdicts. One found that the just compensation to Ostrem for the construction of the valve facility was $300. The second verdict stated:
 

 “We, the Jury, duly impaneled and sworn to try the above-entitled cause, do hereby find that defendant’s activities on the property adjacent to plaintiff’s interfered with the natural drainage across plaintiff’s property causing flooding.
 

 ... we further find that such activities were reasonable.”
 

 The third verdict stated:
 

 “We, the Jury, duly impaneled and sworn to try the above-entitled cause, do hereby find that defendant, in construction of the pipeline, did not interfere with the natural drainage across plaintiff’s property.”
 

 Ostrem has appealed.
 

 Ostrem argues that the trial court erred by treating the action as one for inverse condemnation rather than one for trespass. He says, “The case should be reversed and remanded for a trial on the issue of injunction [sic] relief and on damages for trespass.” Alyeska asserts that the court properly treated the action as one for inverse condemnation.
 

 
 *989
 
 Alyeska may, upon delegation from the state, exercise the power of eminent domain through a declaration of taking or otherwise,
 
 [4]
 
 but its statutory authority does not extend so far as to immunize it from liability for trespass if it has not initiated eminent domain proceedings.
 

 “[A] public utility invested by law with the power to exercise the right of eminent domain is not thereby clothed with an immunity not possessed by others who trespass upon the property or rights of private citizens, and must answer for its wrongs the same as any other trespasser.”
 

 Allen v. Transok Pipe Line Co.,
 
 552 P.2d 375, 381 (Okl.1976).
 
 See also, Ossman v. Mountain States Telephone & Telegraph Co.,
 
 184 Colo. 360, 520 P.2d 738 (1974). Here it is uncontested that Alyeska’s entry onto the land was purportedly pursuant to the easement it had purchased, rather than pursuant to a specific delegation of the right to condemn. If its actions on Os-trem’s land exceeded its rights under that easement, then Alyeska was a trespasser.
 

 The general rule is that a plaintiff landowner may elect to sue a private corporation in tort or in inverse condemnation.
 
 [5]
 
 The differences between these two forms of action, both procedurally and substantively, are substantial. Ostrem has chosen to sue in tort. Therefore, the trial court was incorrect in characterizing the ease as one in inverse condemnation. However, upon consideration of Ostrem’s claims it is apparent that any error in the court’s use of the inverse condemnation terminology is harmless. All that Ostrem has complained about is the denial of injunctive relief and the sufficiency of the damage award.
 

 A landowner is not in all cases entitled to a mandatory injunction for the removal of an encroachment,
 
 [6]
 
 although in-junctive relief is ordinarily appropriate. A court should balance the hardships and equities in deciding whether to order removal of the encroachment.
 
 See
 
 Restatement (Second) of Torts § 941 and comments a-c (1977); D. Dobbs, Handbook on the Law of Remedies § 5.6, at 355-57 (1973); Annot., 28 A.L.R.2d 679 (1953). In the factual setting of the present case, the relevant factors to be considered are the defendant’s state of mind and the relative hardship to the parties if removal is compelled or refused.
 
 [7]
 
 Accordingly, Ostrem is entitled to in-junctive relief unless Alyeska can establish that (a) it acted in good faith
 
 [8]
 
 and (b) the cost or practicability of removing the valve facility is wholly out of proportion to the extent of the trespass.
 

 Since the trial judge did not make findings on the question of Alyeska’s state of mind, we must remand for further consideration of the propriety of injunctive relief. Should the trial court upon remand determine that Ostrem is entitled to injunc-
 
 *990
 
 tive relief, a reconsideration of the damages may be necessary to avoid a double recovery. Obviously Ostrem is not entitled to both removal of the facility and damages for the permanent taking of his property. However, he may be entitled to damages for past trespass in addition to the injunc-tive relief.
 

 If, however, the trial court determines that the denial of injunctive relief was proper, the damages award need not be reconsidered, since the award as granted was at least as great as that which would have been available in a trespass action. In trespass actions, the measure of damages is normally the loss in value of the land or the cost of restoration.
 
 G & A Contractors, Inc. v. Alaska Greenhouses, Inc.,
 
 517 P.2d 1379, 1385 (Alaska 1974). Where there is total destruction of the value of the land, the owner may recover the entire value of the land.
 
 Blanton & Company v. Transamerica Title Insurance Co.,
 
 24 Ariz.App. 185, 536 P.2d 1077, 1080 (1975);
 
 Hughett v. Caldwell County,
 
 313 Ky. 85, 230 S.W.2d 92, 96 (1950). In the absence of an injunction, the trespass is both permanent and total as to Ostrem, since he is excluded from all use of the .013 acres for the foreseeable future. The entire value of the land cannot exceed the fee simple value plus the severance damages which were awarded below under the inverse condemnation theory.
 
 [9]
 
 Therefore, Ostrem was awarded full damages for any continuing trespass by Alyeska.
 

 Ostrem also argues that Instruction No. 17 was “misleading and incorrect as a statement of law.”
 
 [10]
 
 He claims that the rule in this state is that where activities on adjacent property cause surface waters to accumulate on another landowner’s property, the adjacent landowner is liable for the damage unless he has “used reasonable care in constructing an alternate method of drainage to avoid unnecessary injury to other land in the area.” Alyeska contends that the reasonable use rule requires only “that the conduct on the adjacent land be reasonable. If it is, there can be no liability for interfering with the drainage of surface water.”
 

 In adopting the reasonable use rule in
 
 Weinberg v. Northern Alaska Development Corp.,
 
 384 P.2d 450 (Alaska 1963), we quoted the New Jersey Supreme Court’s formulation:
 

 “[E]ach possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface water is unreasonable.”
 

 Id.
 
 at 452,
 
 quoting Armstrong v. Francis Corp.,
 
 20 N.J. 320, 120 A.2d 4, 8 (1956). Nothing in this formulation supports Os-trem’s interpretation, nor has he cited any cases that would support his view. That the facts of
 
 Weinberg
 
 involved a use of adjacent land which amounted to the construction of an alternate drainage ditch was simply fortuitous. Obviously, the failure to create such an alternate drainage might in some cases be unreasonable, or the construction of an alternate drainage might be
 
 *991
 
 so defective as to be unreasonable, but there is no requirement that in every case an adequate alternative drainage be provided. What is required is simply that the adjacent landowner act in a reasonable fashion with respect to the alteration of the surface drainage. Hence, the instruction was entirely adequate.
 

 Ostrem’s final argument, which is unsupported by any citation to authority, is that the second and third jury verdicts are inconsistent and must therefore be set aside.
 
 See
 
 Civil Rule 49(c). Absent a timely objection, this type of claim is waived.
 
 City of Homer v. Land’s End Marine,
 
 459 P.2d 475 (Alaska 1969). Ostrem objected in the superior court, but did not make any attempt to have the case sent back for further consideration or to set aside the verdict. In view of Ostrem’s failure to request any particular action by the superi- or court and considering the fact that he loses under
 
 both
 
 verdicts, we deem this point waived.
 

 The ruling of the superior court is AFFIRMED except insofar as the court denied injunctive relief. The case is REMANDED for reconsideration of the propriety of in-junctive relief in light of this opinion.
 

 [1]
 

 .According to Alyeska, the adjacent landowner, Mr. Cox,
 

 “had allowed Alyeska to mine gravel on his property and to place the removed overburden on the ground near Appellant’s boundary. Although Mr. Cox testified that this did not alter the drainage of snow melt from Appellant’s property, Appellant and another neighbor testified otherwise.”
 

 [2]
 

 . Alyeska had argued that the valve control facility was an appurtenance of the pipeline, and that the easement did not require burying such appurtenances, only the pipeline itself. This was a plausible reading of the quoted language in the easement, but clearly Ostrem’s reading was equally plausible.
 

 [3]
 

 . Alyeska had submitted an uncontroverted affidavit that the aboveground construction was “essential.”
 

 [4]
 

 .
 
 See
 
 AS 38.35.130; AS 09.55.240—.460;
 
 ARCO Pipeline Co. v. 3.60 Acres, More or Less,
 
 539 P.2d 64 (Alaska 1975).
 

 [5]
 

 .
 
 See
 
 6A J. Sackman, Nichols’ The Law of Eminent Domain § 28.3 (rev. 3d ed. 1981). In contrast, as Alyeska points out, a plaintiff landowner’s action against a
 
 public
 
 corporation or government body may be limited to one in inverse condemnation.
 
 See Wickwire v. City & Borough of Juneau,
 
 557 P.2d 783, 784 (Alaska 1976);
 
 State, Department of Highways v. Crosby,
 
 410 P.2d 724, 728-29 (Alaska 1966).
 

 [6]
 

 . Most encroachment cases involve structures encroaching onto a plaintiffs land from horizontally adjoining land. In the instant case, the encroachment is from a subsurface easement up into the soil above plow depth. We see no reason to apply a different rule to such a vertical encroachment.
 

 [7]
 

 . Other factors to be considered in appropriate cases include the conduct of the plaintiff
 
 (e.g.,
 
 whether the plaintiff is guilty of laches or is otherwise estopped from seeking injunctive relief) and the interests of third persons and of the public.
 
 See
 
 Restatement (Second) of Torts § 941(c), (d) and (f) (1977).
 

 [8]
 

 . We note that the fact that Alyeska admits violating the easement is not determinative on this point. Alyeska may have thought, at the time it committed the trespass, that it was acting within the terms of the easement. Or it may have entertained a bona fide, reasonable belief that Ostrem would acquiesce in its actions or would, for a reasonable consideration, grant a more expansive easement.
 

 [9]
 

 . We have noted the similarity between severance damages in trespass and inverse condemnation. Wern
 
 berg
 
 v.
 
 Matanuska Electric Association,
 
 494 P.2d 790, 795 n.16 (Alaska 1972).
 

 [10]
 

 . Instruction 17 read:
 

 “You are instructed that a possessor of property may not conduct unreasonable activities on the property which interfere with the natural drainage of surface water from adjacent property. When Alyeska was mining gravel and conducting its other activities on the Cox property in accordance with its agreements with Mr. Cox, Alyeska was a possessor of the property, and if you find that Alyeska’s activities were not reasonable and resulted in an interference of the natural drainage of surface water from plaintiff’s property you must find for plaintiff on this issue.
 

 Here plaintiff has the burden of proving by a preponderance of the evidence that conduct by defendant resulted in an interference with the natural flow of surface water from plaintiffs property. If you find that there has been such an interference with the natural flow of surface water caused by defendant’s conduct then you must determine whether or not defendant’s conduct was reasonable. Defendant has the burden of proving by a preponderance of the evidence that its conduct was reasonable.”