

# The Attorney General of Texas

**JIM MATTOX**
Attorney General

March 26, 1986

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Juan J. Hinojosa
Chairman
Committee on Budget and Oversight
   for Judicial Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas    78769

Mr. William N. Kirby
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas    78701

Opinion No.  JM-458

Re:  Administration of  basic
skills assessment instruments
pursuant to section 21.551 of
the Education Code

Gentlemen:

You have both inquired about the administration of the examination described by section 21.551 of the Education Code to students limited in English proficiency.  Section 21.551 of the Education Code provides in part:

> (a)  The Central Education Agency shall adopt appropriate criterion referenced assessment instruments designed to assess minimum basic skills competencies in reading, writing, and mathematics for all pupils at the first, third, fifth, seventh and ninth grade levels and in mathematics and English language arts for all pupils at the 12th grade level.

The examination is known as the Texas Assessment of Basic Skills.  See Open Records Decision Nos. 352, 305 (1982).

The examinations adopted under section 21.551 of the Education Code are used in designing compensatory and remedial education programs for students.  Educ. Code §21.557.  An individual student's examination results are confidential, but overall performance data for each school and school district is made available to the public by the school board.  Educ. Code §21.556(b).  The Central Education Agency (CEA) is required to use the examination results to compare the achievement levels of Texas students to those of students in other parts of the country.  Educ. Code §21.559.

The examination has been administered in English since its inception, and Representative Hinojosa questions the appropriateness of this practice for students who have been identified as Limited English Proficiency (LEP) students. The following definition of LEP students is included in the Education Code provisions on bilingual education and special language programs:

'Students of limited English proficiency' means students whose primary language is other than English and whose English language skills are such that the students have difficulty performing ordinary classwork in English.

Educ. Code §21.452(3).

School districts are required to identify the students of limited English proficiency in each school as a first step toward establishing a bilingual education program. Educ. Code §21.453. Representative Hinojosa asks the following question:

Does an assessment test given only in English meet the requirements of section 21.551 of the Texas Education Code for Limited English Proficiency (LEP) children?

This question is particularly directed at the administration of the test to first graders in the La Joya Independent School District, where 426 of the 562 first graders have been identified as limited English proficiency students according to the standards found in section 21.453 of the Education Code. Spanish is the primary language of the students inquired about. We will address Representative Hinojosa's question in the context of these facts.

A school district with 20 or more LEP students in any language classification in the same grade level is required to establish a bilingual education program governed by sections 21.451 through 21.463 of the Education Code and we assume that the La Joya District has done this. The LEP students enrolled in a bilingual program are to receive instruction in English language skills while they study basic skills in their primary language. Educ. Code §21.454. Their progress in English language skills and in other subjects is given considerable monitoring under Education Code provisions. Criteria for entry into the program may include performance on a CEA-approved English language proficiency test administered as an oral test to students in kindergarten or grade 1 and as an oral and written test to all other students. Educ. Code §21.455(a). A CEA-approved test in the primary language may also be given. Id. An LEP student may be transferred out of a bilingual education program if he is able to participate equally in a regular all-English instructional program as determined by:

(1) tests administered at the end of each school year to determine the extent to which the student has developed oral and written language proficiency and specific language skills in both the student's primary language and English;

(2) an achievement score at or above the 40th percentile in the reading and language arts sections of an English standardized test approved by the agency; and

(3) other indications of a student's overall progress as determined by, but not limited to, criterion-referenced test scores, subjective teacher evaluation, and parental evaluation.

Educ. Code §21.455(h). The Central Education Agency is to monitor school district compliance with state rules in several areas, including testing materials. Educ. Code §21.461. In addition, each district that is required to offer bilingual education must establish a language proficiency assessment committee which shall:

(1) review all pertinent information on limited English proficiency students, including the home language survey, the language proficiency tests in English and the primary language, <u>each student's achievement in content areas</u>, and each student's emotional and social attainment;

(2) make recommendations concerning the most appropriate placement for the educational advancement of the limited English proficiency student after the elementary grades;

(3) <u>review each limited English proficiency student's progress at the end of the school year in order to determine future appropriate placement;</u>

(4) monitor the progress of students formerly classified as limited English proficiency who have exited from the bilingual education or special language program and, based on the information, designate the most appropriate placement for the student. . . . (Emphasis added).

Educ. Code §21.462(c).

The progress of a student enrolled in a bilingual program thus receives considerable evaluation at the district level, and the district's compliance with program requirements is subject to review

by the Central Education Agency. The testing requirements are geared to the bilingual program. Administration of the basic assessment of skills examination in English to the first graders in question would provide little or no additional information about their progress in school. The results would be more likely to misrepresent an LEP student's educational attainments. See Castaneda v. Pickard, 648 F.2d 989, 998, 1014; Castaneda v. Pickard, 781 F.2d 456, 462-63 (5th Cir. 1986).

The court's remarks on testing in Castaneda v. Pickard, 648 F.2d 989 (5th Cir. 1981), are instructive here. See also Castaneda v. Pickard, 781 F.2d 456 (5th Cir. 1986) (appeal of district court decision on remand). A Texas school district's use of English language tests to determine ability grouping for LEP students was challenged as discriminatory and the court stated as follows:

> 'Ability groups' for first, second and third grade
> are determined by three basic factors:  school
> grades, teacher recommendations and scores on
> standardized achievement tests. These tests are
> administered in English and cannot, of course, be
> expected to accurately assess the 'ability' of a
> student who has limited English language skills
> and has been receiving a substantial part of his
> or her education in another language as part of a
> bilingual education program.

Castaneda v. Pickard, 648 F.2d 989, 998 (5th Cir. 1981). The court pointed out that the ability grouping practices could "operate to confuse measures of two different characteristics, i.e., language and intelligence . . ." and directed the district court to evaluate this practice on remand. 648 F.2d at 998. See Castaneda v. Pickard, 781 F.2d 456 (5th Cir. 1986) (ability grouping practices were found non-discriminatory).

Castaneda v. Pickard also addressed the school district's testing of LEP students' progress in the bilingual education program. The court noted that the standardized English language achievement test used by the district to test all subject areas did not meaningfully assess the achievement or ability of children who were not yet literate in English. 648 F.2d at 1014. The court directed the district court on remand to require the Texas Education Agency and the school district to implement a Spanish language test to measure the progress of LEP students in subjects other than English.

We recognize that Castaneda arises out of particular facts different from the facts before us, and that we cannot investigate or resolve fact questions in the opinion process. Nonetheless, we believe the precedent of Castaneda requires us to advise the requestors that the first grade LEP students in question are not required to take the English language assessment of basic skills

examination described in section 21.551 of the Education Code.  It is not an appropriate instrument for designating compensatory or remedial instruction for the LEP first graders who have been evaluated for admission to the bilingual education program and whose progress in that program is being monitored under the relevant statutes.  We conclude, on the basis of sections 21.451 through 21.463 of the Education Code and of Castaneda v. Pickard, that an all English test is not an "appropriate . . . assessment [instrument]" to test LEP first graders in the bilingual education program on "minimum basic skills competencies in reading, writing, and mathematics."  Educ. Code §21.551(a).

Accordingly, LEP first graders in a bilingual program are exempted from the basic skills assessment examination until the Texas Education Agency designs an appropriate exam for evaluating them for compensatory education.  In the alternative, the CEA may make a determination that the basic skills competencies of this group of LEP children have been tested sufficiently under the existing requirements for testing participants in the bilingual education program.  It would appear that giving a Spanish language examination would be a means of assessing their skills.  The Central Education Agency, however, has access to the relevant information about the skills first graders should master, about the feasibility of designing a Spanish language exam to test those skills, and about the testing these first graders have already undergone as participants in a bilingual program.  See also Educ. Code §21.554 (local school district may adopt and administer criterion and/or norm-referenced examinations at any grade level).  The CEA may conclude, in the exercise of its administrative discretion, that the extensive testing of these first graders done in the bilingual program is sufficient to carry out the purposes of article 21.551 et seq. of the Education Code.

We turn to Commissioner Kirby's questions, which incorporate Representative Hinojosa's second question.

Commissioner Kirby has asked four questions.  We will answer the first two questions together.  He asks:

> 1. Does the exemption permitted in section 21.555 apply only to handicapped students . . . whose admission, review, and dismissal committees determine that their disability specifically prevents mastery of the competencies to be measured?

> 2. May the State Board of Education exempt classes of students from the basic skills examination other than those prescribed in section 21.555?

Section 21.551 of the Education Code requires the Central Education Agency to adopt appropriate assessment instruments to assess certain basic skills

> for all pupils at the first, third, fifth, seventh, and ninth grade. . . . (Emphasis added).

Section 21.555 of the Education Code provides as follows:

> Any student who has a physical or mental impairment or a learning disability that prevents the student from mastering the competencies which the basic skills assessment instruments are designed to measure may be exempted from the requirements of this subchapter.

Section 21.551 requires assessment of all pupils in the enumerated grades. Section 21.555 provides an express exception from the testing requirement for the students it describes. In answering Representative Hinojosa's question, we have concluded that the Castaneda case and the bilingual education laws form the basis of an exception from the requirements of section 21.551 of the Education Code. Thus, section 21.555 does not state the only possible exception from the testing requirements. Whether any other implied exceptions exist must be decided on a case-by-case basis.

We note, in this context, that the Texas Education Agency in effect exempts LEP students from the basic skills examination. The letter from the Texas Education Agency requesting our opinion informs us of its policy on testing "students who do not read and write the English language with sufficient skill to provide meaningful answers on the examinations":

> Districts have been instructed to identify such students, to complete the demographic information and submit an answer sheet to account for the students, and to provide other productive activities for the students during the testing period. Each district is provided with three separate reports of student scores on the exams: a summary report for all students; a summary report solely for limited English proficient students; and, a summary report for all students except limited English proficient students.

These students thus receive a zero on the examination. This practice is not authorized by the statute and we find no implied authority for it.

The third question is as follows:

> 3. Does section 21.551 require that the same test be administered to all students at a grade level, or does it require that the State Board of Education develop and adopt different 'appropriate' tests for different students or classes of students within a grade level?

Our answer to Representative Hinojosa's specific question about LEP first graders was based in part on facts about that group of students. You ask a broad question, which can only be answered in connection with a specific group of students, in the light of the relevant facts. Accordingly, we do not address your third question.

Your fourth question is as follows:

> 4. May the State Board of Education waive or postpone the testing of certain classes of students until 'appropriate' assessment instruments are developed and adopted for those classes of students?

We find no provision setting a date for the examination or requiring that all students be tested on the same date. The State Board of Education may postpone the testing of certain classes of students if it can do so consistently with the statute. See Educ. Code §§21.551, 21.556 (confidentiality of tests).

## S U M M A R Y

> Section 21.551 of the Education Code, governs the basic assessment of skills examination for students in the first grade as well as higher grades. This testing requirement is subject to an implied exemption, based on Castaneda v. Pickard, 648 F.2d 989 (5th Cir. 1981), and sections 21.451 through 21.463 of the Education Code for first grade students of limited English proficiency who are enrolled in a bilingual education program.

Very truly yours,

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General