**Harold P. BRAHAM, Appellant,**

v.

**Rothel FULLER, Dan Thompson, and Juan Anciburu, Appellees.**

**No. S–1305.**

Supreme Court of Alaska.

Nov. 28, 1986.

Rehearing Denied Dec. 24, 1986.

Alan W. Schon, Law Offices of Arthur Lyle Robson, Fairbanks, for appellant.

Scott L. Taylor, Hoppner & Paskvan, P.C., Fairbanks, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

This case presents the question of what standard for liability applies where a landowner's activities on his land cause permafrost to melt and flood adjacent property. The trial court held that the "reasonable use" standard, previously applied by this court where damage to another's property is caused by interference with surface waters, also applies where the damage is caused by melting permafrost, and granted summary judgment in favor of the defendants. We agree that the reasonable use standard applies. We hold, however, that the grant of summary judgment was improper. We also find that there is no factual basis for concluding that plaintiff's action is barred by the statute of limitations.

## II. FACTS AND PROCEEDINGS

Plaintiff Braham has owned a parcel of about one acre on Farmer's Loop Road near Fairbanks since 1966. Defendants Fuller and Thompson purchased adjoining land in 1974, some of which was uphill from Braham's. They cleared approximately five acres in 1977 and cleared more land during the winter of 1979–80. In the process of clearing, they created "windrows," which are berms of the material cleared from the land. The windrows pointed downhill.

At some point after clearing the uphill land, water began to flow onto Braham's property, flooding his backyard and basement. It is not clear exactly when the flooding started: at one point in his deposition Braham states that it started "right after the clearing," while elsewhere he states that it started "just when I was in jail and ready to get out." (He was in jail from 1977 through 1980 or 1981.) It appears that he was notified of the problem at some point while he was in jail.

Braham states that the water flooded his basement up to a depth of four feet and damaged his furnace. The flooding still occurs, starting during breakup and ending with the freeze. At the peak flow, Braham estimates that at least several hundred gallons a day flow into his basement. His garden has also been flooded and has sunk down. He claims that his property has sunk five feet in some places.

Braham filed suit on April 30, 1984, claiming that defendants "negligently or intentionally designed" the clearing of their property, causing damage to his property in excess of $25,000. He claimed the windrows directed the water onto his land. Defendants moved for summary judgment, arguing that the reasonable use doctrine applied and that they were not liable because their use of their land was reasonable. They also argued that the statute of limitations had run. The superior court agreed with both arguments and granted summary judgment in favor of defendants.

## III. DISCUSSION

A. *The rule of reasonable use applies where a landowner causes permafrost to melt, flooding adjacent property.*

Alaska has

adopt[ed] the rule of reasonable use with respect to one's right to drain his land of surface waters. That rule ... provides "that each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable."

*Weinberg v. Northern Alaska Development Corp.*, 384 P.2d 450, 452 (Alaska 1963), quoting *Armstrong v. Francis Corp.*, 20 N.J. 320, 120 A.2d 4, 8 (1956). The "reasonable use" label is to some extent a misnomer; in *Weinberg* this court looked first, at whether there was a reasonable necessity for defendant to alter the drainage in order to make use of its land, and second, at whether the alteration was done in a reasonable manner. 384 P.2d at

452.[1] The rule was also applied in *Ostrem v. Alyeska Pipeline Service Co.*, 648 P.2d 986, 990–91 (Alaska 1982) (per curiam). There we stated, "What is required is simply that the adjacent landowner act in a reasonable fashion with respect to the alteration of the surface drainage." *Id.* at 991.

The question presented here is whether the rule of reasonable use, a relatively recent development in American drainage law,[2] should be applied where the landowner's activities cause permafrost to melt, damaging adjacent property. Not surprisingly, since permafrost is not a common problem in the United States except in Alaska, the applicability of the rule of reasonable use to melting permafrost has not been the subject of debate among jurists or commentators. Permafrost, however, is a form of groundwater. The same doctrines that apply to drainage of unwanted surface water are applicable to drainage of groundwater. *See* Clark, *supra* n. 1 § 454.1; *see also* Powell, *supra* n. 2, at ¶ 709[4][a] and [c] (discussing applicability of rule of reasonable use to all types of percolating underground water disputes). Thus, it makes sense to apply the rule of reasonable use to melting of permafrost.

### B. *The rule of reasonable use was not properly applied by the trial court.*

In support of their motion for summary judgment, defendants incorporated the arguments made in their pretrial memorandum. There they argued:

Defendants deny that they have altered the flow of surface waters across plaintiff's land, but even if this court finds that defendants have altered the flow of surface water across plaintiff's property, the decision in *Ostrem* is still controlling.... Here, defendants cleared their land and left "berm piles." Defendants did nothing else on their property and took no positive steps to alter the natural drainage of the land, as occurred in *Weinberg*. Defendants use of their land can be characterized as nothing but reasonable; therefore, they can incur no liability for the damage suffered by plaintiff.

At the hearing on defendants' summary judgment motion, plaintiff Braham argued that the damage to his property was "totally foreseeable" given the method of clearing used—"clearing with windrows in the direction that they are and without putting any trench along the edge." Therefore, he claimed, the clearing was unreasonable under the reasonable use rule. The trial court found that clearing is a reasonable use and granted defendants' motion for summary judgment.

The trial court erred in its application of the reasonable use rule. Its finding that clearing is a reasonable use of the property at most answers only the first part of the inquiry required by *Weinberg*, i.e., was there a reasonable necessity to alter the drainage. 384 P.2d at 452. The crux of the rule is a determination whether the alteration itself was done in a reasonable

1. This inquiry has been set forth as two parts of the reasonable use test in a recent treatise on water law, which also offers a third: does "the utility of the actor's conduct reasonably outweigh the gravity of the harm to others?" This part is the traditional nuisance balancing approach, and is said to have the benefit of keeping the overall analysis up to date. 5 R. Clark, R. Beck, E. Clyde, Waters and Water Rights § 453.3 (1972 & 1978 Supp.) (hereafter "Clark").

2. Earlier drainage doctrines were the "common enemy rule" and "the natural flow rule." Under the common enemy rule "[s]urface water is recognized as a common enemy, which each proprietor may fight off or control as he will or is able, either by retention, diversion, repulsion, or

altered transmission; so that no cause of action arises for such interference, even if some injury occurs, causing damage." Clark, *supra* n. 1, § 450.6 (citation omitted). The natural flow rule "places a natural easement or servitude upon the lower land for the drainage of surface water in its natural course and the natural flow of the water cannot be obstructed by the servient owner to the detriment of the dominant owner." *Id.* (citation omitted).

At least eleven states have adopted the reasonable use standard with respect to drainage. *Id.* § 453.2. *See also* 5 R. Powell and P. Rohan, Powell on Real Property ¶ 709[3][d] (1985) (hereafter "Powell").

manner. *Id.; Ostrem*, 648 P.2d at 991. This was not considered.

"Whether particular conduct is reasonable under the circumstances is generally considered a question of fact for the jury." *Carlson v. State*, 598 P.2d 969, 974 (Alaska 1979); *Swenson Trucking & Excavating, Inc. v. Truckweld Equipment Corp.*, 604 P.2d 1113, 1118 (Alaska 1980), *appeal after remand*, 649 P.2d 234 (Alaska 1982). The reasonable use rule applied in this case is closely analogous to a rule of negligence liability, and

> [a]s a general rule, issues of negligence are generally not susceptible to summary determination, but should be resolved by trial in the ordinary manner. The reason for this rule is:
>
> > [B]ecause of the elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in the light of all the circumstances of the case. If reasonable minds could draw different inferences and reach different conclusions from the facts the issue must be reserved for trial.

*Webb v. City and Borough of Sitka*, 561 P.2d 731, 735 (Alaska 1977) (quoting *Gross v. Southern Railway Co.*, 414 F.2d 292, 297 (5th Cir.1969) (citations omitted)).

■ Although it may turn out that there were no precautions defendants reasonably could have taken to minimize the flooding of Braham's land, the reasonableness of their conduct is a question of fact. Braham should be allowed to present evidence showing that the defendants did not "act in a reasonable fashion with respect to the alteration of the . . . drainage." *Ostrem*, 648 P.2d at 991. "[T]he failure to create

. . . an alternative drainage might in some cases be unreasonable." *Id.* at 990; *cf. Micucci v. White Mountain Trust Co.*, 114 N.H. 436, 321 A.2d 573, 575 (1974) (defendant's grading and paving of his land was unreasonable when it caused a concentration of water thereby harming plaintiff's land since "[t]his damage could have been avoided by designing the gradient to spread the flow of the diffused surface waters and prevent a concentrated discharge.").

C. *There is no factual basis for concluding that the statute of limitations had run.*

In their pretrial memorandum, defendants also argued that the six year statute of limitations for actions for trespass upon real property (AS 09.10.050(2)) applied. They argued further:

> Plaintiff filed his complaint on April 30, 1984, so *if* the damages of which plaintiff complains first occurred prior to April 30, 1978, plaintiff's claims are barred by AS § 9.10.050(2). Defendants will introduce evidence at trial to establish that the flooding of which plaintiff now complains was occurring prior to April 30, 1978.

■ The trial court found that the statute of limitations had expired. Since no affidavit or other evidence demonstrates that the cause of action accrued before April 30, 1978,[3] the grant of summary judgment in favor of defendants on the basis of expiration of the statute of limitations was improper.[4]

IV. CONCLUSION

In summary, we hold that the rule of reasonable use applies here, but that the trial court erred in its application in grant-

---

**3.** Braham stated at his deposition: "[The problem] started just when I was in jail and ready to get out." (He was in jail from 1977 to 1980 or 1981.) He also stated that "after [the land] was cleared, I was told that it cleared [sic.] and that the water was coming into the back." There is no indication as to when he was notified.

**4.** We express no opinion whether Braham may file successive suits under theories of continuing

or successive trespasses for damages resulting within the six-year period preceding the suit. *See Bradley v. American Smelting & Refining Co.*, 104 Wash.2d 677, 709 P.2d 782, 791–92 (1985); W. Keeton, D. Dobbs, R. Keeton, and D. Owen, Prosser and Keeton on the Law of Torts § 13, at 83–84 (5th ed. 1984); Restatement (Second) of Torts § 158 comment m (1965).

ing summary judgment for defendants. We also hold that no factual basis for concluding that this case is barred by the statute of limitations was established. The case is REMANDED for further proceedings.