Donald Seale JOHNSON and Amanda Adeline Johnson, Plaintiffs-Respondents,

v.

John C. SCHWARZ and Anna C. Schwarz et al., Defendants-Appellants.

No. 48257.

Supreme Court of Missouri,

Division No. 1.

July 10, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 11, 1961.

Ziercher, Tzinberg, Human & Michenfelder, Erwin Tzinberg, Clayton, for appellants.

Homer A. Cope, D. C. Briggs, Kansas City, N. Murry Edwards, St. Louis, Ninian M. Edwards, Clayton, for respondents.

HOLMAN, Commissioner.

This is the second appeal in this case. Upon the first appeal we affirmed the judgment of the trial court setting aside certain deeds (particularly a collector's deed for taxes) and a quiet title judgment under which defendants Schwarz (hereinafter referred to as defendants) claimed title to lot 16 of Algonquin View Subdivision, Rock Hill, St. Louis County, Missouri, and adjudging that plaintiffs were the owners thereof. See Johnson v. Stull, Mo.Sup., 303 S.W.2d 110. However, defendants had constructed a building upon the lot (and certain adjoining lots) and we held that they were entitled to recover the amount by which the value of lot 16 had been enhanced by reason of the improvements. The case was remanded "with directions to the trial court: to determine the amount by which the improvements made enhanced the property at trial time; to add thereto the amount of taxes which defendants Schwarz have paid on said property; to deduct from such total the sum which the trial court finds, after hearing thereon, was the reasonable rental value of the unimproved lot from the date when the construction of the present building was begun to the date of this judgment; and to enter the difference as a money judgment in favor of either plaintiffs or defendants Schwarz as the case may be, with interest thereon at 6 per cent per annum from the date of such judgment; and, to determine the amount of any taxes paid by defendants, other than Schwarz, and order plaintiffs to refund to such others such respective amounts with interest thereon." 303 S.W. 2d 120.

The trial court held a hearing for the purpose of determining the matters specified in the mandate and thereafter found and adjudged as follows: (1) that the improvements placed on lot 16 did not enhance the value thereof, (2) that defendants paid taxes in the amount of $———, (3) that the rental value of the unimproved lot was $500 per year, totaling for the years 1952–55 the sum of $1,500, (4) that plaintiffs were entitled to recover from defendants rentals collected by defendants from September 1955 to March 1960 in the sum of $10,273, and (5) that by reason of findings 1 to 4, inclusive, judgment was entered for plaintiffs against defendants in the sum of $11,773, less the taxes (amount unspecified) paid by the defendants on said lot. Defendants have duly appealed from that judgment.

The land primarily involved herein is lot 16. However, in the course of the opinion we will also refer to lots 15, 17, and 18. These lots are all 25 feet wide by 125 feet deep and are located on the south side of Manchester Road. In 1947 defendants bought lots 17 and 18 for a total of $2,000. They purchased lot 16 from Roger Stull in 1952 for $1,125. On October 28, 1952, defendants began construction of a brick building. It was approximately 52 feet wide, 100 feet deep, and occupied the major part of lots 16 and 17, and a small part of lot 18. A partition wall was placed in the building so as to make two storerooms. Because defendants thought they were the owners of all the lots they paid no attention to the north-south lot lines in locating the building or partition. The west storeroom is 19 feet wide and since the completion of the building it has been rented to Canine Center for $200 per month. The east room is about 33 feet wide and has been rented to Dan-Dee Furniture Company for $180 per month. All of the west storeroom is located on lot 16 with the exception that a toilet room was constructed east of the partition and a small portion thereof is located on lot 17. The west 6 feet of the east storeroom is located on lot 16. That area includes the entrance door into the furniture store and also the washroom used in connection with that store.

A store building has been constructed on lot 15 which abuts the north 72 feet of the west wall of defendants' building. These abutting walls were not constructed on the true north-south line but were slightly northwest by southeast with the result that

each building encroached on the adjoining lot. The front of defendants' building encroached on lot 15 for 8¼ inches and the south end of the building on lot 15 (Kramer building) encroached on lot 16 for 9⅜ inches. More specifically, the 8¼-inch encroachment of defendants' building at the front gradually diminished until the abutting walls crossed the lot line 45 feet to the south, and for the next 27 feet the encroachment of the Kramer building on lot 16 gradually increased until it amounted to 9⅜ inches at the rear of that building. On November 21, 1952, the owners of lot 15 (Kramers) conveyed to defendants the portion of lot 15 upon which their building encroached and in consideration therefor the defendants conveyed to the Kramers that part of lot 16 upon which the Kramer building encroached. However, the original judgment herein set aside both of those deeds.

Plaintiffs presented two expert witnesses who expressed the opinion that the defendants' building did not enhance the value of lot 16. These opinions were based primarily upon the expenditures said to be required in order to eliminate the encroachment on lot 15 and to change the partition wall to the east line of lot 16 so as to fully utilize that lot. One of those witnesses, Harry Hochmen, estimated that it would cost $3,000 to straighten the west wall of lot 16 so as to remove the encroachment on lot 15. He also expressed the opinion that it would cost eleven or twelve thousand dollars to remove the east wall of the Canine Center and construct a new masonry wall, with footing, on the east boundary line of lot 16. That estimate included electrical work, changes in plumbing, and replacing the entrance door into the furniture store with a brick wall. Upon cross-examination this witness conceded that the building was structurally sound and stated that a new four-inch "plaster on studding" wall similar to the one now in use could be constructed for about 40% of the price of a masonry wall.

In response to a hypothetical question which assumed the various costs testified to by Mr. Hochmen, the other expert, Matthew J. Shaffrey, expressed the opinion that the improvements did not enhance the value of lot 16. He also stated that the rental value of this lot (unimproved) for the years 1952 to 1954, inclusive, would have been $500 per year, which opinion was based upon his view that the valuation of the lot was $5,000.

Two real estate appraisers testified for defendants. Martin L. Neaf stated that the improvements had enhanced the value of lot 16 by $18,750. He was also of the opinion that the value of the lot in 1952 was $1,500 and its rental value $150 per year. Mr. Enno Krache also stated that the rental value of the lot from 1952 to 1955 was $150 per year and expressed the opinion that the lot value had been enhanced to the extent of $19,000 by the improvements placed thereon by defendants. Neither of these witnesses diminished the value of the improvements by reason of the fact that there would be divided ownership of the building.

■ The main task of the trial court under our mandate was to determine the amount by which the improvements enhanced the value of lot 16. This was primarily a fact question although it probably was necessary to consider certain general rules of law. Upon appeal in this type of case we try the case de novo, "review the entire record and determine the value and weight of the evidence. We reach our own conclusions, deferring, where proper, to the findings of the trial chancellor." Feste v. Bartlett, Mo.Sup., 269 S.W.2d 609, 614.

■ In determining the issue before us we will not consider that the encroachment of a small part of the west wall upon lot 15 would greatly diminish the value of the improvements. We think it is reasonable to take a practical view of that problem.

**59**

Since the abutting wall on lot 15 encroaches on a part of lot 16 it is not likely that either owner will require that the wall be straightened. This is demonstrated by the fact that as soon as the situation was discovered in 1952 the then apparent owners of the lots exchanged deeds conveying the land upon which the encroachments had occurred. As soon as this litigation is finally terminated it is reasonable to assume that some arrangement of that nature will again be accomplished.

We do not agree with the finding of the trial court that the improvements did not enhance the value of lot 16. In the first place it would appear that the plaintiffs could disregard the fact that they owned the east 6 feet of the lot, and, without making any changes, would have a storeroom from which they would receive a rental of $2,400 per year. Any rule for determining value based upon rental income that might be applied would indicate a very substantial valuation of these improvements.

The trial court based its finding mainly upon the testimony of Mr. Hochmen. Our reading of his testimony has indicated that in many respects it is almost incredible and certainly not convincing. However, even his testimony would warrant a finding that a partition wall could be installed on the lot line for $4,400, and that included a number of unnecessary items. For example, he provided for plastering the wall on the east side. If the wall is constructed by plaintiffs on lot 16 there would be no requirement that they plaster the wall on the other side for the use of defendants. Of course, in all likelihood, a partnership wall will be constructed at joint expense, but, in view of the history of this litigation we cannot reasonably assume that such will be done. Mr. Hochmen's figures also provided for removing the door entering the east 6 feet and "bricking in" that space. There is nothing to indicate, with certainty, that such will be required. It may well be that the tenant in the building on lot 16 would desire two doors at the front of his building.

A consideration of all of the credible evidence has caused us to conclude that the improvements have enhanced the value of lot 16 to the extent of $16,500.

The most practical and common-sense solution of this vexing problem would be to decree title to the lot in defendants and provide that they pay into court for plaintiffs' benefit the value of the lot as of October 28, 1952, and interest thereon to the date of payment. However, no authority has been cited holding that we have the right to enter such a decree. By analogy, the case of Kehde v. Vaudeville Theatre Co., 299 Mo. 540, 252 S.W. 969, would indicate a contrary rule. At the time of oral argument, however, the attorney for defendants stated that defendants were agreeable to the court giving plaintiffs the option of either accepting the value of the lot and interest or paying the value of the improvements. In view of that statement we will hereinafter make provision for such optional disposition.

■ The trial court erred in entering a judgment for plaintiffs against defendants for the amount of rent ($10,273) collected from tenants using the improvements on the lot from September 1955 to March 1960. While defendants should pay the reasonable rental value of the unimproved lot they are entitled to retain the rents collected for the use of improvements constructed by them until they are compensated therefor. Boatmen's Savings Bank v. Grewe, 101 Mo. 625, 14 S.W. 708. In the original trial the court entered a judgment for rents collected to that date and we reversed that judgment upon the first appeal. That ruling is controlling as to the judgment for rents now being considered. The judgment for rents in the amount of $10,273 is reversed.

We find that the reasonable value of lot 16 on October 28, 1952, was $2,000. Plaintiffs are entitled to a credit upon the amount they must pay for enhancement of value by reason of improvements for the reasonable rental value of the lot from October

28, 1952, until the entry of final judgment in accordance with this opinion. This credit should be reduced, however, by the amount of taxes paid by defendants upon the unimproved lot. That amount, since the construction of the improvements, will have to be prorated and determined by the trial court. We find the reasonable rental value of the lot during that period to be $200 per year.

█ ' As heretofore indicated the judgment for rents in the amount of $10,273 is reversed outright, and in other respects the judgment is reversed and cause remanded with directions as follows:

A. If, within 15 days after the mandate herein is filed in the office of the circuit clerk, the plaintiffs shall deliver into court a quitclaim deed conveying lot 16 to defendants, the court shall order that defendants pay into court for the benefit of plaintiffs, within a reasonable time to be designated, the sum of $2,000, together with 6% simple interest thereon from October 28, 1952, and upon payment of said sum said deed shall be delivered to defendants, the money shall be paid to plaintiffs and the case terminated by appropriate order.

B. In the event said deed is not delivered into court within the 15-day period as herein specified the court shall enter a judgment which shall provide as follows: (1) That defendants are entitled to recover $16,500 by reason of the enhanced value of the lot because of improvements they have placed thereon. (2). That plaintiffs are entitled to a credit for the reasonable rental value of the lot from October 28, 1952, to date of final judgment, computed at the rate of $200 per year. (3) That there shall be deducted from the amount of the rental credit the taxes paid by defendants upon the unimproved lot during that period. (4) That after the computations are made in accordance with subdivisions (1), (2), and (3) of this paragraph a judgment shall be entered in favor of defendants for the balance due them which said judgment shall be a special lien on lot 16 until paid.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.