**Louis N. BASSO and Joanne Basso, Plaintiffs/Appellants/Cross–Appellants,**

**v.**

**Richard MANLIN and Vernon Gaskell, Defendants/Respondents/Cross–Appellants.**

**No. 62599.**

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 23, 1993.

Robert C. Jones, Jr., William Laird Hetlage, St. Louis, for appellants.

Andrew R. Kasnetz, Paul N. Rechenberg, Jack Spooner, St. Louis, for respondents.

CARL R. GAERTNER, Judge.

Plaintiffs, Louis and Joanne Basso, and defendants, Richard Manlin and Vernon Gaskell, a Missouri general partnership, appeal from the trial court's judgment dismissing both parties' claims under a real estate contract.

On November 6, 1988, the Bassos entered into a contract with Manlin & Gaskell for the sale of a home located on a one-acre lot in Sackston Woods, an undeveloped subdivision in Creve Coeur, Missouri. The Bassos paid a $25,000 earnest money deposit into an escrow account and agreed to pay an additional $390,000 on November 1, 1989, the date set for closing the contract. They also took possession of the home and made monthly interest payments of $1,950 until the closing date and made a one-time payment of $402.36 for real estate taxes.

Pursuant to the contract, Manlin & Gaskell agreed to cure a number of defects in the realty, including: (1) fixing or replacing broken fence sections in the back yard within two weeks of the execution of the contract; (2) repairing or removing a diseased tree in the back yard; (3) surveying and staking the corners of the lot; and (4) maintaining water-catch basins and storm sewers on and near the property until they completed their development of the subdivision. The contract further provided that Manlin & Gaskell would indemnify the Bassos for all maintenance, repairs, claims, losses or expenses in regard to maintaining the water-catch basins and storm sewers.

By the closing date, however, Manlin & Gaskell failed to fully perform these promises. They repaired only a portion of the fence, they never repaired or removed the tree, and they failed to survey and stake the Bassos' lot. Furthermore, Manlin & Gaskell failed to continuously maintain the water basin and sewers. The remaining lots in Sackston Woods are higher than the Bassos' lot. After Manlin & Gaskell graded the upper lots, they built a riprap slough to catch and drain runoff water and silt from the higher lots across the Bassos' lot and into a neighbor's yard. In 1989, Manlin & Gaskell cleaned the slough and storm sewers two or three times. Manlin testified that after the vegetation grew back on the upper lots, the runoff water and silt declined, abating the need to clean the basin and sewers. The Bassos, however, testified that Manlin & Gaskell only cleaned the basin and sewers one time and during and after rain showers silt would fill up or block the basin and sewers, causing flooding and siltation on the front, side and back yards.

The Bassos repeatedly demanded, through various agents of the partnership, that Manlin & Gaskell repair these defects. In a letter dated October 20, 1989, the Bassos outlined the problems they had with the property and indicated they were not going to close on the contract. The Bassos refused to tender the $390,000 balance of the purchase price due under the contract on November 1, 1989. The Bassos then remained in possession of the land until January 6, 1990, without making any further payments.

Pursuant to the contract, Manlin & Gaskell notified the Bassos in a letter dated November 2, 1989, that they were in default under the contract and had 10 days to cure the default. The Bassos failed to cure the default, and by December 18 they had not

vacated the premises, prompting Manlin & Gaskell to file an unlawful detainer action in which the partnership alleged damages of $128.50 per day for every day the Bassos maintained possession of the realty beyond the closing date plus $3,908.54 for monthly rents and profits. The Bassos then filed an action in January 1990 to rescind the contract, alleging that Manlin & Gaskell breached the contract by failing to perform their duties and by misrepresenting that a gas grill and alarm system in the house worked properly and that they had repaired a leak in a room in the house. Manlin & Gaskell counterclaimed that the Bassos' failure to close on the contract amounted to breach of contract, entitling the partnership to the $25,000 earnest deposit for damages plus an assessment against the Bassos for various costs. Alternatively, Manlin & Gaskell claimed damages in quantum meruit for permitting the Bassos to use the Sackston Woods home for one year and damages for the Bassos' fraudulent misrepresentation that they would close on the contract on November 1, 1989.

The trial court consolidated the unlawful detainer and rescission actions. The case was tried before the court without a jury. Neither party requested findings of fact or conclusions of law. After submission of the evidence, the court dismissed all claims with costs to Manlin & Gaskell.

On appeal, the Bassos contend the trial court prejudicially erred in dismissing their rescission claim because they conclusively proved Manlin & Gaskell breached vital provisions of the contract. Manlin & Gaskell, on the other hand, contend the trial court erroneously dismissed its counterclaim for breach of contract and its claim for unlawful detainer because the Bassos failed to tender the balance of the purchase price on the closing date and they unlawfully retained possession of the home without the partnership's consent after they defaulted on the contract.

■ Ordinarily, when we review bench trials where the parties do not request findings of fact or conclusions of law, we presume the trial court has made findings in accordance with the decree entered. *Uelk v. Directory Distributing Assoc.*, 803 S.W.2d 632,

634 (Mo.App.1991). However, because an irreconcilable conflict arises when the court's implicit findings are viewed in conjunction, we cannot apply this presumption to the present case.

There was sufficient evidence on the record that Manlin & Gaskell breached the contract by failing to maintain the water basins and sewers, failing to repair the fence and tree, and failing to survey and stake the lot. We therefore must assume that the trial court dismissed the Bassos' claim because Manlin & Gaskell's breaches were not material and thus did not justify rescinding the contract. *See McCullough v. Newton*, 348 S.W.2d 138, 142 (Mo. banc 1961). There was also sufficient evidence that the Bassos breached the contract by failing to appear at the closing and tender the balance due, despite Manlin & Gaskell's ability and willingness to convey their deed to the realty. We therefore must assume that the trial court dismissed Manlin & Gaskell's counterclaim because the partnership's breaches amounted to a material failure of performance, precluding their claim for damages. *See McKnight v. Midwest Eye Institute*, 799 S.W.2d 909, 915–16 (Mo.App.1990); *Joplin CMI, Inc. v. Spike's Tool and Die, Inc.*, 719 S.W.2d 930, 936 (Mo.App.1986).

In essence, the trial court found that Manlin & Gaskell's contract breaches were material in relation to the partnership's counterclaim but immaterial for the Bassos' claim. As a result, the trial court's findings, when reviewed in conjunction with each other, are irreconcilably inconsistent and contradictory.

Research has not disclosed a Missouri decision in which the result reached by the trial court after a non-jury trial necessitates an inference of factual findings which are so inconsistent as to be mutually destructive. Other jurisdictions have adhered to the principle that a "factfinder on a single set of facts and circumstances cannot reach two different conclusions of fact as expressed in its findings or verdicts that will support valid judgments if the opposite, inconsistent conclusions are irreconcilable." *Paul v. Kuntz*, 524 N.E.2d 1326, 1329 (Ind.App. 2 Dist.1988); *see also DeVita v. Esposito*, 13 Conn.App. 101, 535 A.2d 364, 369–70 (1987); *Graham v.*

*Mid–State Oil Co.,* 79 N.C.App. 716, 340 S.E.2d 521, 524 (1986). In Missouri, we have remanded cases for a new trial where the jury returned two logically inconsistent verdicts, even though each verdict, upon independent review, appeared to be supported by sufficient evidence. *See, e.g., Massey v. Rusche,* 594 S.W.2d 334, 338–39 (Mo.App. 1980); *Warner v. Pruett,* 599 S.W.2d 207, 210–11 (Mo.App.1980).[1]

Accordingly, we reverse the trial court's judgment and remand for a new trial on all issues.

CRANE and CRAHAN, JJ., concur.

---

1. In *Douglass v. Safire,* 712 S.W.2d 373, 374 (Mo. banc 1986), our Supreme Court held that a party who accepts an inconsistent verdict without objection until after the discharge of the jury, has waived the inconsistency. That case has no application here, where the decision of the trial court was handed down twenty-three days after the trial was concluded and both parties appealed.