### James HOSTLER, et al., Plaintiffs/Respondents,

v.

### GREEN PARK DEVELOPMENT CO., et al., Defendants/Appellants.

### No. 73570.

Missouri Court of Appeals,
Eastern District,
Division One.

Feb. 16, 1999.

William T. Weidle, Jr., St. Louis, Eric Martin, Chesterfield, James D. Bass, St. Louis, for Appellant.

David Bayland, Union, for respondent.

CLIFFORD H. AHRENS, Judge.

Defendants Lawless Homes, Inc. ("Lawless Homes") and Green Park Development Company ("Green Park") appeal from the judgment in a bench-tried case. The trial court awarded plaintiffs $205,000.00 in actual damages and $75,000.00 in punitive damages. We affirm in part and reverse in part.

Green Park was the initial owner and developer of the six acre tract of land in dispute. Green Park petitioned St. Louis County to establish a Planned Environmental Unit (PEU) for property encompassing the six acre tract in unincorporated St. Louis County which became known as the Spring Hill Farm Subdivision. A PEU is an alternative zoning procedure which provides flexibility to the developer by permitting it to construct differing building types on the same development to promote diverse, sound, urban developments. *See* S.L.C.R.O. section 1003.187.2. St. Louis County granted Green Park preliminary permission to develop Spring Hill Farm as a PEU in June 1983 when it adopted Ordinance No. 11,065. Green Park was required to submit a site development concept plan for the county's approval within eighteen months of the ordinance's adoption.

On May 16, 1984, Green Park recorded its "Site Dev. Plan/Preliminary Plat" for Spring Hill Farm. The plan bore a legend which recited:

> Green Park Development Company, the owner(s) of this property shown on this plan for an [sic] in consideration of being granted a permit to develop said property under the provisions of Section 1003.117 & 1003.187 S.L.C.R.O., "R–4", "FP–R–4" & P.E.U. of the St. Louis County Zoning Ordinances, do(es) hereby agree, declare and covenant that *from the date of recording of this plan, the property shall be developed only as shown herein. This covenant shall run with the land,* and shall be enforceable pursuant to Sections 67.870–.900 R.S.Mo. by St. Louis County or its successor as a plan of development adopted by the St. Louis County Planning Commission to promote orderly development. This plan may be amended or superseded by the Planning Commission or modified by the Department of Planning or voided by order or ordinance of the St. Louis County Council, each as more particularly authorized by the St. Louis County Zoning Ordinance now or hereafter in effect.

(emphasis added). This plan designated the six acres in dispute as common ground. Green Park filed an "Amended Site Development Plan" with respect to Spring Hill Farm Subdivision on August 27, 1984, but did not change the common ground designations found in the site development plan recorded on May 16.

On May 7, 1985, Green Park recorded an Indenture of Trust and Restrictions which reserved land designated as common ground, including the six acres at issue, in the "various plats" of the Spring Hill Farm Subdivision. The provisions of the trust indenture authorized the trustees to enforce the restrictions on the common ground. In the trust indenture, Green Park referred to the site development plan recorded on May 16, 1984 as the "final development plan."

Sometime in 1993, Mount Olympus Properties, Inc. ("Mount Olympus"), approached the staff of the St. Louis County Planning Commission for recommendations on a plan to

develop the six acres of common ground. A county land use manager questioned the plan in that such development may have violated the density requirements for which the property was zoned under the PEU. The land use manager further noted that a substantial departure from the PEU would require a public hearing.

On November 10, 1993, Green Park entered into negotiations with Mount Olympus for the sale of 13.5 acres, including the six acres of common ground, for $175,000.00. On June 4, 1993, the parties agreed that Mount Olympus would pay $10,000.00 in earnest money upon the final annexation of the property into the City of Valley Park.

The Spring Hill Farm Subdivision was to be developed in a plan that consisted of four "phases." St. Louis County granted preliminary approval of Green Park's petition to develop Phase IV, which included the six acres in dispute, on June 6, 1994 in Ordinance No. 17,047. The Phase IV plat Green Park initially submitted to the St. Louis County Planning Commission showed the six acres originally designated "common ground" in the site development plat were now marked for "future developments." This plan was not approved because it was not in conformance with the final site development plan. The Phase IV plat eventually approved by St. Louis County designated the six acres as the "West Un–Platted Area." The designation recognized that the land was not included in the record plat for the development of Phase IV. The west un-platted area was not needed to meet the density requirements of the Phase IV developments. Upon recording a record plat, St. Louis County required the developer to convey common ground to the trustees of a subdivision by general warranty deed. *See* S.L.C.R.O. section 1003.187.12. However, as the west un-platted area was excluded from the Phase IV record plat, it was not conveyed to plaintiffs.

On August 17, 1994, Green Park and MC Homes, Inc. ("MC Homes")[1] petitioned the City of Valley Park for the voluntary annexation of contiguous property, including the west un-platted area. A public hearing was held on September 6, 1994, but the lot owners of Spring Hill Farm did not receive personal notice of the hearing. No written objections to the annexation were submitted and the property was annexed into the City of Valley Park.

On September 12, 1994, Mount Olympus assigned the November 10, 1993 real estate contract, and its amendments, to MC Homes, which assumed Mount Olympus' obligations under the contract. The property conveyed was reduced to solely the six acres comprising the west un-platted area. Accordingly, the purchase price was reduced to $163,-000.00. In addition, MC Homes agreed to pay Mount Olympus the sum of $42,000.00.

On November 5, 1994, plaintiff James Hostler, a trustee of Spring Hill Farm, was first notified of the proposed development of the west un-platted area. On that day, he visited the offices of Michael Lawless, the president of Lawless Homes. During their conversation, Lawless told Hostler that in his opinion, the final site development plan could be changed and therefore the west un-platted area was not "common ground." Further, Lawless "felt that it would not be good for [Hostler] to involve [himself] with getting in the way of the progress of developing that common ground area."

On November 7, 1994, Hostler attended a public hearing in the City of Valley Park, the purpose of which was to determine future development of property including the west un-platted area. At the public hearing, Hostler identified himself as a property owner in the Spring Hill Farm Subdivision, but he did not state his concern that the trustees of Spring Hill Farm had an interest in the west un-platted area. Valley Park rezoned the west un-platted area to allow the development of residential homes.

After its acquisition of the west un-platted area on November 16, 1994, Lawless Homes began to develop the Glenn Brooke Subdivision. Spring Hill Farm lot owners met on December 10, 1994 to discuss Lawless Homes' proposed development of the west un-platted area. The trustees contacted

---

1. Lawless Homes, Inc. was previously MC Homes, Inc., and is the same entity.

Lawless Homes in May 1995 and requested information regarding the west un-platted area. Lawless Homes' July 1995 reply consisted only of the Phase IV plat. Plaintiffs filed suit in August 1995, and at the same time filed a notice of lis pendens on the west un-platted area. At the time of trial, Lawless Homes had constructed and sold forty-one homes on the west un-platted area.

Plaintiffs' amended petition contained five counts. In Count I, plaintiffs sought to enjoin defendants from entering upon, or constructing any improvements upon, the west un-platted area. In Count II, plaintiffs sought to eject defendants, remove the improvements constructed upon the west un-platted area and recover damages for the "fair rental value" and loss of use of the common ground. In Count III, plaintiffs asked that the court quiet title in the west un-platted area in favor of plaintiffs. In Count IV, plaintiffs asked that the court award actual damages due to defendants' "misappropriation, conversion and trespass" upon the common ground. Plaintiffs additionally alleged the actions were done with intent, willfulness or reckless disregard of plaintiffs' property rights, and asked for punitive damages. In Count V, plaintiffs asked that the court set aside the annexation of the west un-platted area by defendant City of Valley Park.

The trial court entered judgment in favor of defendants on Counts I, II, III and V.[2] The court entered judgment in favor of plaintiffs on Count IV and awarded actual damages in the amount of $205,000.00 and punitive damages in the amount of $75,000.00.

We will sustain the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *DCW Enterprises, Inc. v. Terre du Lac Ass'n, Inc.*, 953 S.W.2d 127, 130 (Mo. App.1997). The trial court did not enter findings of fact or conclusions of law. This court must assume that all fact issues were found in accordance with the result reached. *Nahm v. Soffer*, 824 S.W.2d 442, 444 (Mo.App.

1991). The judgment must be affirmed if it is correct under any reasonable theory pleaded and supported by the evidence. *Whiteside v. Rottger*, 913 S.W.2d 114, 119 (Mo.App. 1995).

Although the issue of standing was not raised by the parties, we are obliged to consider the standing of plaintiff trustees. The trust indenture regulating Spring Hill Farm empowers the trustees to "prevent, as Trustees of an express trust, any infringement and to compel the performance of any restriction set out in this Indenture or established by law, and also any rules and regulations issued by [trustees] governing the use of the Common Property or any matters relating thereto." Under Rule 52.01, trustees of an express trust may bring a civil action in their own names in such representative capacity. *See Eyerman v. Mercantile Trust Co., N.A.*, 524 S.W.2d 210, 212 (Mo.App.1975).

In its first point on appeal, Lawless Homes argues that the trial court erred in entering judgment in favor of plaintiffs on Count IV in that the evidence failed to establish any legal property right in the subject property. Lawless Homes initially argues that the trial court's judgment on plaintiffs' claims created an irreconcilable conflict between the implicit findings required to support the court's conclusions. *See Basso v. Manlin*, 865 S.W.2d 431 (Mo.App.1993). After reviewing the claims, judgment and evidence adduced, we find no irreconcilable conflict; *Basso* does not apply.

■ Lawless Homes then argues that plaintiffs had no enforceable property rights in the common ground. We disagree. We find that the issue of plaintiffs' property interest is controlled by the recent decision of this court in *Hoag v. McBride & Son Inv. Co., Inc.*, 967 S.W.2d 157 (Mo.App.1998).

■ Developers of residential property create a covenant benefiting all future landowners of the development by restricting the use of a particular piece of property in one of three ways: (1) placing the restriction on use of the burdened property in the deeds it

---

**2.** Plaintiffs cross-appeal, contesting the judgment in favor of defendants only on the condition that we reverse the trial court's award of actual dam-

ages. Due to our resolution of the main appeal, we need not decide the cross-appeal.

gives to both the person seeking to enforce the restriction and the person who owns the burdened property; (2) recording the terms of the covenant; or (3) developing and selling the land pursuant to a common plan or scheme of improvement. *Hoag v. McBride & Son Inv. Co., Inc.*, 967 S.W.2d 157, 168 (Mo.App.1998). A developer creates covenants in favor of all landowners by clearly including the restrictions in an accurate plat of the development that it properly records. *Id.* Lawless Homes argues that the Site Development Plan recorded on May 16, 1984 does not constitute a "plat" and therefore did not create a covenant in favor of plaintiffs. The statutes governing the proper filing of plats only require that the appropriate local governing body endorse its approval on the face of the plat before the developer can record it. Section 89.440, RSMo 1994; section 445.030, RSMo 1994. A "plat" may be "any depiction of the division of one tract into a number of smaller lots with eventual separate ownership of each lot." *Hoag*, 967 S.W.2d at 169.

The Site Development Plan bears the alternate title "Preliminary Plat." It divides the land in the "east½ of the northeast¼ of section 13, township 44 north, range 4 east St. Louis County, Missouri" into smaller lots. St. Louis County approved the proposed plat and endorsed that approval on the face of the plat before it was filed. Under the standards set forth in *Hoag*, the May 16, 1984 filing was a "plat." *Id.* at 168–69. Green Park created a covenant in favor of all future Spring Hill Farm landowners restricting the development of the common ground. The covenants run with the land and still cover the land encompassed in the 1984 plat. *Parkton Ass'n v. Armstrong*, 878 S.W.2d 50, 53 (Mo. App.1994). Lawless Homes, as a subsequent purchaser, was on notice of the covenants as recorded. *Id.*

■ Lawless Homes next argues that in its rezoning of the west un-platted area, the City of Valley Park destroyed any interest plaintiffs may have had in the common ground. Lawless Homes relies upon the language in the plat which states that the covenants in the plat:

shall be enforceable pursuant to Sections 67.870–.900 R.S.Mo. by St. Louis County *or its successor* as a plan of development adopted by the St. Louis County Planning Commission to promote orderly development. This plan may be amended or superseded by the Planning Commission or modified by the Department of Planning or voided by order or ordinance of the St. Louis County Council, each as more particularly authorized by the St. Louis County Zoning Ordinance now or hereafter in effect.

(emphasis added). Lawless Homes argues that as the City of Valley Park annexed the property at issue, it was the appropriate authority to approve any development of the property. We hold that the City of Valley Park's actions did not affect plaintiffs' rights in the common ground.

A landowner has a protectable property interest in a covenant that benefits the land. Consequently, a landowner's interest in a covenant cannot be terminated unless (1) the landowner voluntarily consents to the termination, (2) a governmental entity institutes a proper condemnation proceeding, or (3) the neighborhood has changed so significantly as to defeat the purpose of the covenant.

*Hoag*, 967 S.W.2d at 171 (internal citations omitted).

■ There was no evidence adduced at trial that the change occurred pursuant to a condemnation proceeding or that the surrounding neighborhood had changed so significantly as to defeat the purpose of the covenant. Contrary to Lawless Homes' assertion, Hostler's silence at the public hearing on November 7, 1994 did not constitute "voluntary consent."

■ No evidence was adduced at trial which demonstrated that the covenant had been eliminated. Zoning ordinances cannot defeat the rights of a landowner in a covenant because zoning is not a proper condemnation action. *Hoag*, 967 S.W.2d at 171; *Matthews v. First Christian Church of St. Louis*, 355 Mo. 627, 197 S.W.2d 617, 619–20 (1946). The zoning ordinance passed by the City of Valley Park had no effect upon the

covenant created by the plat Green Park recorded on May 16, 1984.

The essence of an action for trespass is violation of possession, not challenge to title. *Meeker v. Grissum*, 970 S.W.2d 345, 347 (Mo.App.1998). To support an action for trespass, the party making the claim must have the legal right to possession. *Id.* Liability for trespass exists whether or not done in good faith and with reasonable care, in ignorance or under mistake of law or fact. *Kitterman v. Simrall*, 924 S.W.2d 872, 879 (Mo.App.1996). Point denied.

In its second point on appeal, Lawless Homes argues that the evidence was insufficient to support a judgment for actual damages in the amount of $205,000.00. The general measure of damages for trespass is the difference in the value of the plaintiff's property immediately before and immediately after the trespass or the cost of restoration, whichever is less. *Kelley v. Kelly Residential Group, Inc.*, 945 S.W.2d 544, 552 (Mo.App.1997). When there is total destruction of the value of the land, the plaintiff may recover the entire value of the land. *Ostrem v. Alyeska Pipeline Service Co.*, 648 P.2d 986, 990 (Alaska 1982); *Blanton & Co. v. Transamerica Title Ins. Co.*, 24 Ariz.App. 185, 536 P.2d 1077, 1080 (Ariz.Ct.App.1975).

In this case, the value of the property cannot be restored to plaintiffs. The trial court declined to quiet title in favor of plaintiffs; Lawless Homes had constructed forty-one houses on the west un-platted area. At the time of trial, these houses had been sold and occupied. In *Ostrem*, the defendant, without authority or permission, constructed "an aboveground valve control facility on .013 acres of the plaintiff's property." *Ostrem*, 648 P.2d at 988. The Alaska Supreme Court found that "[i]n the absence of an injunction, the trespass is both total and permanent as to [the plaintiff], since he is excluded from all use of the .013 acres for the foreseeable future." *Id.* at 990. The Alaska Supreme Court approved the measure of damages as the fair market value of the land occupied by the facility. *Id.* at 988, 990.

The use of fair market value as the measure of damages for land subject to a permanent trespass has received tacit approval by the Missouri Supreme Court. In *Johnson v. Schwarz*, 349 S.W.2d 56 (Mo. banc 1961), the defendants built a storeroom on a lot belonging to the plaintiffs. *See Johnson v. Stull*, 303 S.W.2d 110 (Mo. banc 1957). After remand to the trial court, the case again came before the Missouri Supreme Court to determine the proper measure of damages. *Schwarz*, 349 S.W.2d at 58. Unlike the instant case, in *Schwarz*, title had been quieted in plaintiffs. However, the Missouri Supreme Court noted that "[t]he most practical and common-sense solution of this vexing problem would be to decree title to the lot in defendants and provide that they pay into court for plaintiffs' benefit the value of the lot." *Id.* at 59. We agree.

The fair market value is defined as the price which property will bring when it is offered for sale by an owner who is willing but under no compulsion to sell and is bought by a buyer who is willing or desires to purchase but is not compelled to do so. *Evinger v. McDaniel Title Co.*, 726 S.W.2d 468, 475 (Mo.App.1987). Lawless Homes paid $205,-000.00 for the west un-platted area. The evidence of the sale price was relevant and probative to the fair market value of the west un-platted area. The purchase was recent and not at a remote point in time, no marked changes in conditions or values have occurred since the sale, the sale was voluntary and was not a "forced sale." *State ex rel. State Highway Com'n v. Rauscher Chevrolet Co.*, 291 S.W.2d 89, 92 (Mo. banc 1956).

Lawless Homes then argues that as the fair market value of the west un-platted area was for its use as residential property, it is an improper measure of damages in this case. The purpose of an award of damages is to make the injured person whole by money compensation. *Fidelity Nat. Title Ins. Co. v. Tri–Lakes Title Co., Inc.*, 968 S.W.2d 727, 733 (Mo.App.1998). Defendants did not object to the admission of the sales contracts at trial. No other evidence was adduced at trial as to the value of the west un-platted area. Although we are not unmindful that plaintiffs' use of the west un-platted area was as common ground, we cannot conclude as a matter of law that the evidence was insuffi-

cient to support a judgment in favor of plaintiffs in the amount of $205,000.00 of actual damages. It is sufficient if the value of real estate set by the fact finder is "within the range" of the evidence adduced at trial. *Wooten v. DeMean,* 788 S.W.2d 522, 528 (Mo.App.1990). The award of actual damages was supported by substantial evidence. Point denied.

■■■■ In its third point on appeal, Lawless Homes argues that the evidence was insufficient to support a punitive damages judgment in the amount of $75,000.00. We agree. Missouri common law permits an award of punitive damages in an action for trespass. *Maryland Heights Leasing, Inc. v. Mallinckrodt, Inc.,* 706 S.W.2d 218, 226 (Mo.App.1985). Punitive damages may be awarded if the evidence shows the trespass was malicious, willful, intentional or reckless. *Moore v. Dudley,* 904 S.W.2d 496, 499 (Mo. App.1995). For common law punitive damage claims, the evidence must meet the clear and convincing standard of proof. *Rodriguez v. Suzuki Motor Corp.,* 936 S.W.2d 104, 111 (Mo. banc 1996). Punitive damages are like other cases requiring the clear and convincing standard of proof: the remedy is so extraordinary or harsh that it should be applied only sparingly. *Id.* at 110. Whether punitive damages should be awarded is a matter for the discretion of the trial court and our review is limited to whether that discretion was abused. *Gibson v. Adams,* 946 S.W.2d 796, 804 (Mo.App.1997). Where a party acts in good faith and honestly believes that his act is lawful, he is not liable for punitive damages. *Tamko Asphalt Prod., Inc. v. Arch Assoc.,* 830 S.W.2d 434, 441 (Mo.App.1992). Plaintiffs failed to show clear and convincing evidence that defendants acted with malice. We reverse the trial court's award of punitive damages.

In its single point on appeal, Green Park alleges that the trial court erred in entering judgment in favor of plaintiffs under the theory of promissory estoppel because that cause of action was never filed or tried. In its memorandum opinion, the trial court suggested that "[w]hile the concept of promissory estoppel was not pled, nor tried as a viable issue in the case," plaintiffs could have amended their pleadings to include such a claim. Contrary to Green Park's assertion, the statement in the trial court's memorandum opinion does not reflect that the trial court relied on the unpled theory of promissory estoppel in arriving at its judgment. Point denied.

We need not reach additional issues raised in the appeal of plaintiffs or defendant City of Valley Park because of the disposition of this case. We reverse the award of punitive damages and affirm the judgment of the trial court in all other respects.

JAMES A. PUDLOWSKI, P.J., and WILLIAM H. CRANDALL Jr., J., concur.